COURT OF APPEALS
DECISION
DATED AND FILED

October 16, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2023AP986**
**2023AP2273**
**2024AP2255**

Cir. Ct. Nos. 2022CV117
2019CV178

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

DEAN GALLOWAY,

    PLAINTIFF-APPELLANT,

  V.

TIMOTHY D. SCHIEWE,

    DEFENDANT-RESPONDENT.

---

V.A. HOUSE N3595, LLC AND DEAN K. GALLOWAY,

    RESPONDENTS-CROSS-APPELLANTS,

  V.

KT HAY, LLC AND TIMOTHY D. SCHIEWE,

    APPELLANTS-CROSS-RESPONDENTS.

---

**V.A. HOUSE N3595, LLC AND DEAN GALLOWAY,**

    **APPELLANTS,**

  **V.**

**KT HAY, LLC AND TIMOTHY D. SCHIEWE,**

    **RESPONDENTS.**

---

APPEALS and CROSS-APPEAL from orders of the circuit court for Waushara County:  GUY D. DUTCHER, Judge.  *Orders affirmed.*

Before Kloppenburg, Nashold, and Taylor, JJ.

¶1    KLOPPENBURG, J.   In these consolidated appeals and cross-appeal, the parties challenge the circuit court's resolution of various claims by V.A. House N3595, LLC, and Dean K. Galloway against KT Hay, LLC, and Timothy D. Schiewe concerning Schiewe's construction activity on a portion of property that is owned by Schiewe and that abuts property owned by Galloway.[1]

---

[1] Following the parties' lead, and for ease of reading, we generally refer to V.A. House N3595, LLC, and its owner Dean K. Galloway collectively and individually as Galloway, and to KT Hay, LLC, and its owner Timothy D. Schiewe collectively and individually as Schiewe.

Pursuant to WIS. STAT. RULE 809.10(3), these cases have been consolidated for disposition by an order of this court dated September 29, 2025, and the caption in Appeal No. 2023AP2273 is changed to correspond to the caption in the circuit court and to the position of the parties in the circuit court.

All references to the Wisconsin Statutes are to the 2023-24 version.

¶2 *Schiewe's appeal in Appeal No. 2023AP2273.* Schiewe challenges the circuit court's denial of Schiewe's pretrial motions to dismiss Galloway's common law private nuisance claim directed at Schiewe's construction of two pole buildings on Schiewe's property near the boundary with Galloway's property.[2] We conclude that the court properly denied these motions. Like the circuit court, we conclude that Galloway's allegations that Schiewe's construction of the two pole buildings interfered with Galloway's use and enjoyment of his property—specifically his right to a view that is unobstructed by buildings—sufficed to state a claim.

¶3 Schiewe also challenges the circuit court's denial of his postverdict motion for judgment notwithstanding the verdict on the common law private nuisance claim. We conclude that the court properly denied this motion. Specifically, we conclude that Galloway presented legally sufficient evidence that Schiewe's construction of the two pole buildings caused significant harm to the ordinary person.

¶4 Schiewe further challenges the circuit court's postverdict order that the common law private nuisance found by the jury be abated by removal of the two

---

[2] In the circuit court, the terms "pole buildings" or "pole barns" were used to describe the structures that Schiewe erected on the portion of his property that abutted Galloway's property. A pole building is typically a storage structure with steel siding on the exterior, used to store farm equipment and vehicles.

3

pole buildings. We conclude that the court's order of abatement is consistent with applicable law.[3]

¶5 *Galloway's cross-appeal in Appeal No. 2023AP2273.* Galloway challenges the circuit court's denial of his request for leave to amend the second amended complaint by including in a consolidated second amended complaint his newly pleaded breach of contract, promissory estoppel, fraud, and misrepresentation claims. Those claims were directed at Schiewe's allegedly false promise not to build on the portion of Schiewe's property within the sight line of Galloway's property, and Schiewe's alleged misrepresentations supporting that promise, in return for Galloway's promise not to build on the portion of his property within the sight line of Schiewe's property. Galloway fails to show that the court erroneously exercised its discretion in dismissing those claims without prejudice on the ground that the inclusion of those claims was contrary to the court's order that the second amended complaint not raise new claims.

¶6 Galloway also challenges the circuit court order disallowing the punitive damages that the jury awarded to Galloway on the common law private nuisance claim when the court ordered abatement of the nuisance. We conclude

---

[3] Schiewe also challenges the circuit court's denial of his postverdict motion to change the jury's award of compensatory damages on Galloway's common law private nuisance claim as unsupported by the evidence at trial. As we explain below, in addressing Galloway's cross-appeal we conclude that the court properly disallowed the compensatory damages award to Galloway on the common law private nuisance claim when the court ordered abatement of the nuisance by the removal of the two pole buildings. Accordingly, we do not further address Schiewe's argument that the court should have changed the amount of compensatory damages awarded by the jury based on the trial evidence. *See* **Barrows v. American Fam. Ins. Co.**, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

that, under the applicable law, the court properly disallowed the punitive damages award in the absence of a legally recoverable compensatory damages award.

¶7     Galloway further challenges the circuit court's denial of Galloway's postverdict request for attorney fees and costs. We conclude that Galloway fails to show that the court erroneously exercised its discretion in denying Galloway's request for fees and costs.

¶8     *Galloway's appeal in Appeal No. 2024AP2255.* Galloway challenges the circuit court's denial of his motion for relief from the judgment entered on his common law private nuisance claim. In that motion, Galloway argued that new facts—relating to Schiewe's construction of a fuel depot between the two pole buildings after the jury returned its verdict finding the two pole buildings to be a private nuisance—required reconsideration of several of the court's pretrial and postverdict decisions. We conclude that Galloway fails to show that the court erroneously exercised its discretion in denying the motion on the grounds that it was barred by issue preclusion and that it was based on new facts that occurred after the jury returned its verdict and the court entered its judgment.

¶9     *Galloway's appeal in Appeal No. 2023AP986.* Galloway challenges the circuit court's dismissal of the complaint that he filed in a separate action (the new complaint) after the trial on his claims relating to Schiewe's construction of the two pole buildings. In the new complaint, Galloway alleges fraud and misrepresentation claims relating to Schiewe's allegedly false promise not to build on the portion of Schiewe's property within the sight line of Galloway's property, and Schiewe's allegedly false representations supporting that promise, in return for Galloway's promise not to build on the portion of his property within the sight line of Schiewe's property.

5

¶10    We conclude that the circuit court properly dismissed the new complaint on the ground that the claims in the new complaint are barred by claim preclusion. More specifically, we conclude that the claims in the new complaint—which seek relief for the harm allegedly caused to Galloway by Schiewe's construction of the two pole buildings and a fuel depot on Schiewe's property abutting Galloway's property contrary to Schiewe's allegedly false promise and representations—arise out of the same transaction as the claims in the complaint in the case that went to trial—which sought relief for the harm allegedly caused to Galloway by Schiewe's construction of the two pole buildings on Schiewe's property abutting Galloway's property. While Galloway presented different legal theories and sought different remedies in the two complaints, the claims in the two complaints share the same nucleus of operative facts—Galloway's and Schiewe's communications concerning their respective plans for construction on their properties and Schiewe's subsequent construction activity on Schiewe's property abutting Galloway's property. Moreover, the facts alleged in the new complaint supporting Galloway's fraud and misrepresentation claims—regarding Schiewe's promise and his subsequent construction of the two pole buildings in violation of that promise—were known to Galloway at the time he filed his initial and first amended complaints in the case that went to trial. The new allegations of another mode of breaking that promise—the construction of the fuel depot—do not render claim preclusion inapplicable.

¶11    Separately and finally, we deny as unsupported Schiewe's motion in this court for sanctions against Galloway for assertedly unprofessional conduct, and we deny as untimely and unwarranted Galloway's motion in this court to remove one of Schiewe's attorneys.

¶12     Accordingly, we affirm the orders challenged in these consolidated appeals and cross-appeal.

## BACKGROUND

¶13     We set out here sufficient facts to establish the context for the various disputes at issue, and we present more detailed facts as pertinent to each of those disputes in the discussion that follows.

¶14     In 2017, Galloway bought two parcels of land in Redgranite in Waushara County.  One parcel is approximately 30 acres and abuts 29th Road to the east and a hay field owned by Schiewe to the north.  The second parcel, located further north on 29th Road, is approximately 1.2 acres and abuts 29th Road to the east and Schiewe's hay field to the south and west.  Galloway constructed several buildings on the 30-acre property and, in June 2019, a house on the 1.2-acre property.  In November or December 2019, Schiewe began constructing two pole buildings close to the edges of Schiewe's hay field abutting Galloway's 1.2-acre parcel: one building to the south and one building to the west of Galloway's house.  Once constructed, the two pole buildings were about 25 feet in height.  An aerial photograph of Galloway's house and Schiewe's pole buildings is reproduced below (the pole buildings are the long buildings perpendicular to each other):

7



¶15    Galloway testified that Schiewe constructed the two pole buildings only after learning that the zoning regulations prohibited Schiewe from constructing a 20-foot-high fence in the same locations as the two pole buildings. Galloway testified that in September 2019, Schiewe told him that Schiewe planned to construct the fence to destroy Galloway's view, if Galloway did not either raze his house or sell the 1.2-acre parcel to Schiewe. Schiewe testified that his threats to build a fence were not serious and were based on his frustration that Galloway had not sold him the 1.2-acre parcel after years of discussing it. In October 2019, Schiewe made a final offer for the property, which Galloway declined. Schiewe testified that his inability to build a large fence had no correlation with his decision to build the two pole buildings and that the location of the pole buildings was the most practical to serve his farming needs.

¶16    In December 2019, Galloway filed a complaint against Schiewe alleging that Schiewe's construction of the two pole buildings: (1) violated zoning ordinances contrary to WIS. STAT. § 59.69(11); (2) constituted a private nuisance under WIS. STAT. § 844.10, which prohibits the construction of "[a]ny fence, hedge

or other structure in the nature of a fence unnecessarily exceeding 6 feet in height, maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property" (referred to as the "statutory private nuisance fence claim"); (3) interfered with real property contrary to WIS. STAT. § 844.01; and (4) constituted a common law private nuisance. We will generally refer to this case as the "LLC case" because the named parties were the LLCs.

¶17    After Galloway filed an amended complaint alleging the same four claims, Schiewe filed a motion to dismiss the amended complaint for failure to state a claim on which relief can be granted. The motion was in part subsequently converted to a motion for summary judgment. The circuit court held a hearing on the motion in September 2020.

¶18    The circuit court entered an order in October 2020 that: (1) granted Schiewe's motion for summary judgment dismissing the zoning claim and Schiewe's motion to dismiss the statutory private nuisance fence claim; and (2) denied Schiewe's motion to dismiss the interference with real property claim and the common law private nuisance claim. In the order, the court also granted Galloway's request to file a second amended complaint "for purposes of clarifying the remedies [Galloway] seeks" but stated that "[Galloway] shall not add additional legal claims." We, like the circuit court and the parties, generally refer to this order as the "no new claims order."

¶19    Galloway filed the second amended complaint in December 2020. In the second amended complaint, Galloway expanded on his allegations relating to Schiewe allegedly constructing the two pole buildings to coerce Galloway into selling the 1.2-acre parcel, and also added the allegation that, in April 2018, Galloway promised that the buildings he would construct on his two parcels would

not block Schiewe's views, and Schiewe promised that he would not block Galloway's views. Pertinent here, the second amended complaint alleged the same interference with real property claim under WIS. STAT. § 844.01 and common law private nuisance claim, and sought the same remedies, as in the first amended complaint.

¶20 In April 2021, while the LLC case was pending, Galloway initiated a separate case (generally, the "personal case") by filing a complaint against Schiewe. The complaint in the personal case contained detailed allegations about Galloway's personal circumstances and motivation for purchasing the property in Waushara County; his interactions with Schiewe regarding each of their plans for developing their adjoining properties; their interactions after Galloway began construction activity on his property; Schiewe's subsequent construction activity on his property abutting Galloway's property; and the effect of Schiewe's conduct on Galloway's health and the value of his property. The complaint alleged seven claims: (1) property damage caused by crime under WIS. STAT. §§ 895.446 and 943.01 (regarding Schiewe's construction of the two pole buildings); (2) intentional infliction of emotional distress (regarding Schiewe's construction of the two pole buildings and alleged conduct before and during construction); (3) breach of contract (regarding the parties' alleged agreement not to obstruct each other's views); (4) promissory estoppel (if the agreement is not a contract); (5) fraud (regarding Schiewe's alleged false promise and misrepresentations as to his construction plans); (6) negligent misrepresentation (if the alleged false promise and misrepresentations are not fraud); and (7) strict liability misrepresentation (if the alleged promise and misrepresentations are not negligent).

¶21 Galloway moved to consolidate the LLC case and the personal case, and requested leave to amend the second amended complaint by including the claims newly pleaded in the personal case in a consolidated second amended complaint. Schiewe moved to dismiss the claims in the personal case as violating the no new claims order in the LLC case. The circuit court granted the motion to consolidate and scheduled a hearing to address the motion to dismiss and "any other issues that need the [c]ourt's involvement."

¶22 At the hearing, the circuit court issued an oral ruling denying Galloway's request for leave to amend the second amended complaint by including the breach of contract, promissory estoppel, fraud, negligent misrepresentation, and strict liability misrepresentation claims in a consolidated second amended complaint. The court explained that these claims were "brought in clear contradiction of the [c]ourt's very express[], direct order that no additional claims would be filed." The court granted Galloway's request to include the claims for property damage caused by crime and intentional infliction of emotional distress in a consolidated second amended complaint. The court explained that these claims directly related to the interference with property and common law private nuisance claims in the LLC case. After the hearing, the court entered an order that granted Schiewe's motion to dismiss without prejudice the breach of contract, promissory estoppel, fraud, negligent misrepresentation, and strict liability misrepresentation claims, and denied Schiewe's motion to dismiss the claims for property damage caused by crime and intentional infliction of emotional distress.

¶23 At the final pretrial conference in May 2022, Schiewe renewed his motion to dismiss Galloway's common law private nuisance claim, and the circuit

11

court denied the motion for the same reasons that it had denied Schiewe's earlier pretrial motion.

¶24 The case based on the consolidated second amended complaint proceeded to a six-day jury trial on the intentional infliction of emotional distress and common law private nuisance claims.[4] The first day of trial included a site visit to the property at issue by the circuit court judge, the parties, and the jury. In the remaining days of trial, the jury heard testimony from Galloway, Galloway's wife, Schiewe, the Director of Zoning and Land Conservation for Waushara County, two real estate appraisers, two psychologists who evaluated Galloway, and builders who worked for both Galloway and Schiewe.

¶25 The jury ruled in favor of Galloway on the common law private nuisance claim and awarded him $300,000 in compensatory damages for the loss of fair market value of his property. The jury awarded no compensatory damages for the loss of use or enjoyment of his property. The jury also awarded Galloway $1,000,000 in punitive damages. The jury ruled against Galloway on the intentional infliction of emotional distress claim.

¶26 Schiewe moved for judgment notwithstanding the verdict on the common law private nuisance claim, for the circuit court to change two answers on the verdict regarding the existence of a nuisance and the award of compensatory damages, and for the circuit court to reduce the punitive damages award. The court

---

[4] The circuit court dismissed the property damage caused by crime claim on grounds that are not challenged on appeal. The court also implicitly, and without objection in the circuit court or challenge on appeal, dismissed the interference with property claim under WIS. STAT. § 844.01 as a separate claim from the common law private nuisance claim, by not allowing the § 844.01 claim to go to trial. As discussed below, the court did use § 844.01 to fashion an equitable remedy after the jury found that Schiewe's two pole buildings constituted a private nuisance.

entered an order that denied Schiewe's motions for judgment notwithstanding the verdict and to change the verdict, and granted Schiewe's motion to reduce the punitive damages award to $600,000.

¶27    In January 2023, Galloway moved for multiple forms of relief related to the jury verdict and the circuit court's postverdict order. Pertinent here, Galloway asked that the court order the removal of Schiewe's two pole buildings and award Galloway attorney fees.

¶28    In April 2023, the court held a remedies hearing at which it issued its ruling on remedies as follows. The court granted Galloway's request for abatement and ordered the removal of the two pole buildings. The court disallowed the jury's compensatory damages award, reasoning that since the two pole buildings would be removed, there would no longer be the reduction in the fair market value of Galloway's property on which the compensatory damages award was based. The court also disallowed the punitive damages award, reasoning that punitive damages were not available in the absence of compensatory damages. The court also denied Galloway's request for attorney fees. The court further ordered a 15-year "no build" restriction on Schiewe's property, with some limited exceptions. Following its oral ruling, the court sua sponte stayed the order, anticipating appeals from the parties.

¶29    Both parties filed motions for reconsideration concerning the circuit court's ruling at the remedies hearing. Schiewe argued that the court should reverse its decision to place a "no build" restriction on Schiewe's property. Galloway argued that certain details of the "no build" restriction should be reconsidered, the court should grant attorney fees, the court should grant punitive damages, and the court should grant an injunction prohibiting certain other items and structures from being placed on Schiewe's property. The court held a hearing on the motions to

13

reconsider. At the hearing, at Galloway's request, the court withdrew the previously ordered "no build" restriction.

¶30    In October 2023, the circuit court entered its final order for entry of judgment. In the order, the court: (1) granted Galloway's motion for abatement and ordered the removal of the two pole buildings, while simultaneously staying the order pending appeal; (2) reduced Galloway's compensatory damages to $0.00; (3) reduced Galloway's punitive damages to $0.00; (4) denied Galloway's motion for attorney fees; and (5) denied both parties' motions for reconsideration.

¶31    In July 2024, Galloway filed a motion for relief from judgment under WIS. STAT. § 806.07(1)(c), (g), and (h). The motion was based on Schiewe's "newly constructed fuel depot" between his two pole buildings, and asked that the circuit court amend its abatement order to include the fuel depot, reconsider its denial of attorney fees in light of the new construction, and allow the statutory private nuisance fence claim based on the fuel depot. The court held a hearing and, in August 2024, entered an order denying the motion.

¶32    Meanwhile, in September 2022, after the jury returned its verdict but before the circuit court held the remedies hearings summarized above, Galloway commenced a new action against Schiewe. The complaint in the new case alleged fraud, negligent misrepresentation, and strict liability misrepresentation. The new complaint alleged that in 2018, Schiewe made a false promise, supported by false representations, that Schiewe would not build on Schiewe's property so as to block Galloway's views if Galloway promised he would not block Schiewe's views; and that Galloway relied on Schiewe's false promise and misrepresentations when Galloway constructed buildings on Galloway's property. The complaint also alleged that Galloway learned in September 2022 that Schiewe intended to build a

14

fuel depot between the two pole buildings Schiewe had constructed in late 2019. Galloway alleged that Schiewe's construction of the two pole buildings and intention to construct a fuel depot violated the verbal agreement they had made previously about where each of them would and would not build, and that Galloway would have constructed his buildings in different locations had he known of Schiewe's false promise and misrepresentations.

¶33 In December 2022, Schiewe moved to dismiss the new case as barred by claim preclusion, and the circuit court granted the motion in March 2023.

¶34 These appeals and cross-appeal follow.

## DISCUSSION

¶35 We address sequentially Schiewe's appeal in Appeal No. 2023AP2273, Galloway's cross-appeal in that same appeal, Galloway's appeal in Appeal No. 2024AP2255, and Galloway's appeal in Appeal No. 2023AP986.

## I. Schiewe's Appeal in Appeal No. 2023AP2273

¶36 Schiewe challenges the circuit court's denial of his pretrial motions to dismiss Galloway's common law private nuisance claim and of his postverdict motion for judgment notwithstanding the verdict on that claim. Schiewe also challenges the court's postverdict abatement order requiring the removal of the two pole buildings. We address these challenges in turn.

### A. Private Nuisance Claim

¶37 Schiewe moved twice before trial to dismiss Galloway's common law private nuisance claim seeking damages for the obstruction of the views from

15

Galloway's property resulting from the construction of the two pole buildings. After the jury found in Galloway's favor on that claim and awarded compensatory damages for loss of fair market value resulting from the obstruction of those views, Schiewe moved for judgment notwithstanding the verdict on the common law private nuisance claim. Schiewe argued in each motion that the claim fails as a matter of law, and the circuit court denied each motion.

¶38    On appeal, Schiewe argues that the common law private nuisance claim fails as a matter of law because the interest that Galloway alleged in his complaint and asserted at trial—unobstructed views from Galloway's property across Schiewe's farm fields—is not legally protected. Schiewe also argues that the common law private nuisance claim fails as a matter of law because Galloway presented at trial evidence of harm only to himself, and a common law private nuisance claim requires proof of harm to the ordinary person. We reject the first argument as contrary to relevant legal authority and the second argument as unsupported by the record.

### 1. Applicable Standard of Review and Legal Principles

¶39    "'A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint.'" *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693 (quoted source omitted). "Upon a motion to dismiss, we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." *Id.* The complaint's sufficiency depends on the substantive law that underlies the claim. *Id.*, ¶31. "'If the facts reveal an apparent right to recover under any legal theory, they are sufficient as a cause of action.'" *Strid v. Converse*, 111 Wis. 2d 418, 423, 331 N.W.2d 350 (1983) (quoted source omitted). Whether a complaint adequately pleads a cause of action is a question of

law that we review de novo. *Hermann v. Town of Delavan*, 215 Wis. 2d 370, 378, 572 N.W.2d 855 (1998).

¶40 We also review de novo the circuit court's denial of a motion for judgment notwithstanding the verdict. *Fricano v. Bank of Am. NA*, 2016 WI App 11, ¶19, 366 Wis. 2d 748, 875 N.W.2d 143. "A motion for judgment notwithstanding the verdict 'does not challenge the sufficiency of the evidence to support the verdict.'" *Id.* (quoted source omitted). "Rather, such a motion 'admits for purposes of the motion that the findings of the verdict are true, but asserts that judgment should be granted [to] the moving party on grounds other than those decided by the jury.'" *Id.* (quoted source omitted). A party is entitled to judgment notwithstanding the verdict when "'the facts found by the jury are not sufficient as a matter of law to constitute a cause of action.'" *Id.* (quoted source omitted).

¶41 "A nuisance is an unreasonable activity or use of property that interferes substantially with the comfortable enjoyment of life, health, [or] safety of another or others." *State v. Quality Egg Farm, Inc.*, 104 Wis. 2d 506, 517, 311 N.W.2d 650 (1981). "'The essence of a private nuisance is an interference with the use and enjoyment of land.'" *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶27, 277 Wis. 2d 635, 691 N.W.2d 658 (quoting W. Page Keeton et al., *Prosser and Keeton on Torts* § 87, at 619 (5th ed. Lawyers ed. 1984), and citing *Krueger v. Mitchell*, 112 Wis. 2d 88, 103, 332 N.W.2d 733 (1983); RESTATEMENT (SECOND) OF TORTS § 821D (1977); RESTATEMENT (SECOND) OF TORTS § 822 cmt. c).[5] "The tort of nuisance gives legal protection to a person's

---

[5] Wisconsin has explicitly adopted the definition of private nuisance set forth in the RESTATEMENT (SECOND) OF TORTS, § 821 (1977). *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶25 n.4, 277 Wis. 2d 635, 691 N.W.2d 658.

interest in the unimpaired use and enjoyment of land. This protection extends not only to the preservation of the property itself but also to its enjoyable use." ***Krueger***, 112 Wis. 2d at 106.

¶42 A person's interest in the unimpaired use and enjoyment of property encompasses "'the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land.'" ***Gumz v. Northern States Power Co.***, 2006 WI App 165, ¶23, 295 Wis. 2d 600, 721 N.W.2d 515, *aff'd*, 2007 WI 135, 305 Wis. 2d 263, 742 N.W.2d 271 (citing Restatement (Second) of Torts § 821D cmt. b). A private nuisance is "broadly defined to include any disturbance of the enjoyment of property." ***Prah v. Maretti***, 108 Wis. 2d 223, 232, 321 N.W.2d 182 (1982). "[T]here are no per se exceptions to nuisance claims in Wisconsin; nuisance claims may arise from *any* disturbance of the enjoyment of property." ***Apple Hill Farms Dev., LLP v. Price***, 2012 WI App 69, ¶14, 342 Wis. 2d 162, 816 N.W.2d 914 (rejecting argument that a nuisance claim can never be based on an obstruction to a party's view from the party's property).

¶43 "The activity complained of … must be offensive to a person of ordinary and normal sensibilities." ***Bubolz v. Dane County***, 159 Wis. 2d 284, 298, 464 N.W.2d 67 (Ct. App. 1990) (citing ***Bie v. Ingersoll***, 27 Wis. 2d 490, 493, 135 N.W.2d 250 (1965)). Whether an activity is a nuisance depends on the particular facts in light of "'the general standards of normal persons in the community.'" ***Krueger***, 112 Wis. 2d at 107 (quoted source omitted). These particular facts include whether the land is in "a rural, rather than urban, area." ***Bubolz***, 159 Wis. 2d at 299 (citing ***Abdella v. Smith***, 34 Wis. 2d 393, 400, 149 N.W.2d 537 (1967)).

## 2. Additional Background

¶44    In the second amended complaint, Galloway referenced his enjoyment of "the beautiful open views of the fields" surrounding his property. Galloway alleged that Schiewe constructed the two pole buildings "to block Galloway's views," "to be eye-sores," to "reduc[e] the value of [Galloway's] property," and to "reduc[e] Galloway's enjoyment of his property." Galloway alleged that the construction of the two pole buildings "invade[s] [Galloway's] interest in the private use and enjoyment of [his] property by … [i]nterfering with the natural beauty of the area [and] … [b]locking site [sic] lines of [Galloway's] property." Galloway further alleged that the two pole buildings "are intended to disrupt [Galloway's] pleasure, comfort, and enjoyment of the [p]roperty" by "stopping access to … views which are indispensable to the enjoyment of the property."

¶45    Galloway and two appraisers addressed the views from Galloway's property in their testimony at trial. Galloway testified as follows. The views from Galloway's property of the "beautiful fields" were what was "so wonderful" about the property. Schiewe told Galloway that Schiewe wanted to block Galloway's views from Galloway's house, and to "completely destroy [Galloway's] view[s]." In constructing the two pole buildings, Schiewe "fulfilled [Schiewe's] threat" of destroying Galloway's views. Galloway asked Schiewe to rotate the two pole buildings "90 degrees" so that the buildings did not "destroy [Galloway's] view[s]," but Schiewe did not do so.

¶46    Appraiser Kent Steele testified for Galloway as follows. The "view premium," or the monetary benefit of the views, for Galloway's property was one-third. "The one-third is a downward adjustment from the [value of the] unobstructed" property because the property "lost its only desirable views" due to

19

the existence of the two pole buildings and was worth less as a result. Without the two pole buildings, the property's value was $650,000; with the two pole buildings, its value was $434,000.

¶47 Appraiser Timothy Freudenthal testified at trial for Schiewe that there was no loss of value to Galloway's property based on the obstruction of views from the property. In his deposition testimony, which was read to the jury during trial, Freudenthal testified that the impairment of the views from Galloway's property "could be 80 percent." He acknowledged that Galloway's property "lost almost all of its desirable view amenities" because of the construction of the two pole buildings, but testified that, "[f]rom a market standpoint based on highest and best use, the loss of view is minimal."

¶48 As stated, the jury found in favor of Galloway on his common law private nuisance claim based on the obstruction of the views from his property, determined that Galloway suffered a loss of his property's fair market value as a result of the nuisance, and determined that Galloway himself suffered no loss of use or enjoyment of his property.

3. Analysis—Interest in Unobstructed Views

¶49 We agree with the circuit court that the allegations in the second amended complaint summarized above sufficed to state a common law private nuisance claim based on the two pole buildings' obstruction of the views of the fields from Galloway's property.

¶50 Schiewe argues that the claim fails because an unobstructed view is not a legally protected property interest. We reject this argument as unsupported by the legal authority cited by Schiewe and contrary to the legal authority cited above.

¶51 As an initial matter, we reject Schiewe's characterization of an unobstructed view as "a preferred view." The second amended complaint alleged that the views that were blocked were of open fields in a rural area. While a party may have less interest in views in an urban area where houses are built close to each other on small lots, the views across open fields in a rural area are not "preferred," but can inherently be part of the enjoyment derived from property located in the midst of those fields. Our supreme court has noted that "what would be a nuisance on the Capitol Square in Madison would not be a nuisance in the country." *Abdella*, 34 Wis. 2d at 400. The converse is equally valid: what would be a nuisance in the country would not be a nuisance in the city. Schiewe fails to persuade us that unobstructed views of open fields cannot be part of the use and enjoyment of property in a rural area.

¶52 Schiewe cites two cases that hold that there is no right to compensation in a condemnation action for the loss, in one case, of a property owner's view of a public street, and, in the other case, of the visibility of a billboard from a public road: *Randall v. City of Milwaukee*, 212 Wis. 374, 249 N.W. 73 (1933) (owner's view); and *Adams Outdoor Advertising Limited Partnership v. City of Madison*, 2018 WI 70, 382 Wis. 2d 377, 914 N.W.2d 660 (visibility of billboard). Neither case supports Schiewe's proposition that a nuisance claim cannot be based on an interest in an unobstructed view.

¶53 In *Randall*, our supreme court considered a landowner's claim that a shelter covering the entrance to a pedestrian tunnel under a public street constituted an unconstitutional taking because it obstructed the view of the street from the landowner's abutting property. *Randall*, 212 Wis. at 376-77. The court stated that the owner of land abutting a street has the right of view as an incident to ownership.

21

*Id.* at 378. However, the court clarified that that right is subject to the "public street use and purpose as the location of the street requires." *Id.* The court ruled that, because the city had acquired the land for street purposes, the public rights in the street were paramount to those of private landowners and the landowner in that case was, therefore, not entitled to condemnation compensation for the loss of such rights as the right of view. *Id.* at 380-85. That is, there was no taking of the right of view when the city constructed structures on a street that the city had acquired. *Id.* at 384-85. Rather, the landowner could seek consequential damages under a statute that provided "'a remedy for the incidental damages to abutting land, no part of which is taken.'" *Id.* at 383-85 (quoted source omitted).

¶54 In *Adams*, our supreme court considered the claim that the city took Adams' property without compensation when the city constructed a pedestrian bridge over a public road that blocked the visibility from the road of one side of Adams' billboard. *Adams*, 382 Wis. 2d 377, ¶2. The court ruled against Adams, concluding that the holding in *Randall* summarized above was dispositive. *Adams*, 382 Wis. 2d 377, ¶31. Based on *Randall*, the court ruled that the reduced visibility of the billboard from the road resulting from the pedestrian bridge was not a taking of private property for public use. *Adams*, 382 Wis. 2d 377, ¶¶31-39. The court concluded that "a right to visibility of private property from a public road" is not "a right recognized under [Wisconsin] takings jurisprudence." *Id.*, ¶¶23, 46.

¶55 The inapplicability of these two cases to the issue here is obvious. This case concerns a private party's interest in the party's property vis-à-vis another private party's use of that other party's property, and whether that use is a nuisance entitling the first party to remedies including abatement and damages. Whether the first party's asserted interest is protected is determined by nuisance law, not takings

22

law. Schiewe fails to explain, with citation to relevant legal authority, why these two cases involving the interplay of public and private rights under takings jurisprudence apply to this nuisance action between two private parties.

¶56     Schiewe's citation to *Hay v. Weber*, 79 Wis. 587, 48 N.W. 859 (1891), fares no better. In *Hay*, our supreme court considered a claim by an owner of property used as a store seeking to enjoin an adjoining property owner's construction of two bay windows extending into the street as a nuisance because the windows would damage the store's business by obstructing the view to and from the store. *Id.* at 587-89. The court rejected the claim, concluding that the bay windows would not prevent access to the store, and that the allegation that the limited obstruction of visibility of the store by the public would damage the store's business was "too remote and speculative to constitute the basis of a private action at law or in equity." *Id.* at 591. Schiewe's citation of this case for the proposition that an unobstructed view "to or from one's property is not a legally protected interest" misrepresents the case's holding. Schiewe does not develop an argument based on relevant legal authority to support his repeated assertions that *Hay* requires rejection as a matter of law of the claim here that Schiewe's obstruction of the views of open fields from Galloway's property is a private nuisance.

¶57     Schiewe also cites non-Wisconsin case law, but foreign case law does not bind us. *State v. Muckerheide*, 2007 WI 5, ¶7, 298 Wis. 2d 553, 725 N.W.2d 930. Moreover, Wisconsin case law refutes Schiewe's argument. As summarized above, a private nuisance is "broadly defined to include any disturbance of the enjoyment of property," *Prah*, 108 Wis. 2d at 232, in light of "'the general standards of normal persons in the community,'" *Krueger*, 112 Wis. 2d at 107 (quoted source omitted). "[T]here are no per se exceptions to nuisance claims in Wisconsin;

23

nuisance claims may arise from *any* disturbance of the enjoyment of property." *Apple Hill Farms*, 342 Wis. 2d 162, ¶14. The allegations in the second amended complaint and the trial testimony presented above sufficiently establish that the obstruction of views across fields from property in a rural area may disturb the property owner's enjoyment of that property, in light of the general standards of normal persons in the community, so as to constitute a private nuisance.

¶58 Schiewe argues that *Prah* is limited only to access to sunlight and that access to sunlight is objective and can be easily decided by a jury, while an unobstructed view is subjective and diverts the jury from the reasonable person standard that applies to a nuisance claim. This argument fails in at least the following respects. While the claim in *Prah* concerned access to sunlight, the language rejecting per se exclusions to nuisance law is not limited only to access to sunlight. *See Prah*, 108 Wis. 2d at 237-38 (rejecting per se exclusions to nuisance law generally, citing *State v. Deetz*, 66 Wis. 2d 1, 224 N.W.2d 407 (1974)). In addition, the court in *Prah* clarified that recognizing an interest in property that may be protected under nuisance law "does not mean that [interference with that interest] will be or must be found to constitute a nuisance under all circumstances." *Prah*, 108 Wis. 2d at 240. That finding is for the jury to make, and Schiewe does not explain why a jury cannot determine whether the obstructed views resulting from the pole buildings here unreasonably interfere with the ordinary person's use and enjoyment of the property at issue. Indeed, the jury here found a loss of Galloway's property's fair market value based on the obstructed views, even as it found no loss in Galloway's use and enjoyment of his property.

¶59 Schiewe broadly argues that "legal chaos" will result from a ruling that the interference with unobstructed views of open fields in a rural area can

24

support a private nuisance claim. Schiewe portrays a parade of horribles emanating from such a ruling that has no grounding in the facts of this case or in the requirement, addressed in the next section, that a nuisance be "offensive to [a] person of ordinary and normal sensibilities." *Bie*, 27 Wis. 2d at 493. We reject this argument as speculative.

¶60    In sum, to exclude unobstructed views of fields in a rural area as a property interest under nuisance law would "restrict[] the essential flexibility of the nuisance doctrine." *See Vogel v. Grant-Lafayette Elec. Coop.*, 201 Wis. 2d 416, 427, 548 N.W.2d 829 (1996) (rejecting limiting nuisance to a physical interruption with the use of the land); *see also Apple Hill Farms*, 342 Wis. 2d 162, ¶¶13-15 (concluding that defendant's retaining wall that blocked plaintiff's view from plaintiff's property, among other things, was a nuisance). We decline to do so here.

### 4.  Analysis—Harm to Ordinary Person

¶61    Schiewe argues that the jury's verdict finding that the two pole buildings constituted a nuisance should be changed as a matter of law because Galloway offered no evidence of significant harm to an ordinary person, but only of harm to himself based on his vulnerabilities and susceptibilities. We agree with Schiewe that for an activity to be a private nuisance, the plaintiff must present evidence that the activity is "offensive to [a] person of ordinary and normal sensibilities." *Bie*, 27 Wis. 2d at 493; *see also Krueger*, 112 Wis. 2d at 106 (liability for a nuisance exists "'only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community'" (quoted source omitted)). However, the record refutes Schiewe's argument that the evidence presented at trial did not suffice to make that showing here.

25

¶62     While Galloway presented evidence of his own personal sensitivities, he also presented evidence from which a jury could reasonably find that the two pole buildings' obstruction of the views of open fields from Galloway's property interferes with Galloway's enjoyment and use of his property from the perspective of a person of ordinary sensibilities. Galloway himself testified that the views of the open fields from his property were essential to his enjoyment of his property, and that the two pole buildings destroyed those views. The appraisers both testified, either at trial or in the deposition testimony read to the jury, that Galloway's property lost almost all of the most desirable views from the property, and one of the appraisers testified that that loss reduced the fair market value of the property by one-third. The jury visited the site and saw for itself the views from Galloway's property, including the views in the direction of the two pole buildings. The jury's site visit and the testimony just summarized were unqualified by and independent of sensitivities personal to Galloway and provided a basis from which the jury could find that the obstruction of the views from Galloway's property caused significant harm based on the standards of a "normal person in the community." ***Krueger***, 112 Wis. 2d at 106 (liability for a nuisance exists "'only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community'" (quoted source omitted)).

## B.  Abatement Order

¶63     Schiewe argues that the circuit court's postverdict abatement order fails as a matter of law because it lacks the findings of inadequate remedy at law and irreparable harm that are required for injunctive relief. We reject this argument as contrary to relevant legal authority.

¶64    Once a nuisance has been found, "'the [circuit] court ha[s] the power to adapt its remedy to the exigencies and needs of the case.'" *Schultz v. Trascher*, 2002 WI App 4, ¶31, 249 Wis. 2d 722, 640 N.W.2d 130 (quoted source omitted). "[A]ny remedies fashioned under the provisions of [WIS. STAT.] § 844.01 may be applied to a private nuisance dispute if the circumstances warrant such an application." *Schultz*, 249 Wis. 2d 722, ¶31. Pertinent here, § 844.01(1) provides that a court may, as a remedy for interference with a person's property interest, issue an order "to redress past injury, to restrain further injury, to abate the source of injury, or for other appropriate relief." § 844.01(1). The statute further provides: "Interference with an interest is any activity other than physical injury which lessens the possibility of use or enjoyment of the interest." § 844.01(3). Whether to award equitable relief under § 844.01 is within the court's discretion. *Schultz*, 249 Wis. 2d 722, ¶25. A court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law and, using a rational process, reaches a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶65    After the jury rendered its verdict finding that the two pole buildings constituted a private nuisance and awarded compensatory damages for loss of fair market value and punitive damages, Galloway filed a motion for abatement and other equitable relief, including that the circuit court order removal of the two buildings. The court held three hearings related to postverdict remedies.

¶66    At the first remedies hearing, the circuit court noted that this was a "property damage lawsuit," that WIS. STAT. § 844.01 authorized it to abate the nuisance causing the damage, and that the damage was caused by the two pole buildings that were the focus of the suit and which the jury found were erected for

27

a malicious purpose.  The court reasoned that to award only monetary damages "would be to endorse … the concept that one may put up … structures for the sole and exclusive purpose … of harassing, intimidating, and maliciously causing difficulty to their neighbor, and the [c]ourt can do nothing about it as long as [the neighbor] get[s] paid for [the difficulty]."  The court rejected that idea and ordered abatement.  The court subsequently issued an order for entry of judgment granting Galloway's motion for abatement and ordering that the two pole buildings be razed.  The court also stayed the abatement order pending appeal.

¶67    Schiewe argues that the circuit court erroneously exercised its discretion because it did not address the requirements for an injunction, namely, the lack of an adequate remedy at law and irreparable harm.  In support of this proposition, Schiewe cites *Sunnyside Feed Co. v. City of Portage*, 222 Wis. 2d 461, 472, 588 N.W.2d 278 (Ct. App. 1998) ("There are two considerations when deciding whether to grant an injunction: (1) the movant has no adequate remedy at law; and (2) the movant will suffer irreparable harm if the injunction is not granted.").  However, that case does not address the selection of remedies allowed under WIS. STAT. § 844.01 and, therefore, does not apply here, when Galloway opted under § 844.01 to select the remedy of abatement.

¶68    As quoted above, this court in *Schultz* concluded "that any remedies fashioned under the provisions of [WIS. STAT.] § 844.01 may be applied to a private nuisance dispute if the circumstances warrant such an application."  *Schultz*, 249 Wis. 2d 722, ¶31.  Here, as reflected in the circuit court's remarks summarized above, the court explained its conclusion that the circumstances were appropriate for the application of abatement under § 844.01.  The record establishes that the

court examined the facts, applied a proper standard of law, and reached a conclusion that a reasonable judge could reach.

¶69     For the reasons stated, we conclude that Schiewe fails to show that the circuit court erroneously exercised its discretion in ordering the WIS. STAT. § 844.01 remedy of abatement.

## II. Galloway's Cross-Appeal in Appeal No. 2023AP2273

¶70     Galloway argues that the circuit court erred in making the following three decisions: (1) dismissing without prejudice the breach of contract, promissory estoppel, fraud, and two misrepresentation claims that Galloway asked to include in a consolidated second amended complaint (referred to in this opinion as the fraud and misrepresentation claims, following Galloway's lead in his briefing); (2) disallowing the punitive damages that the jury awarded to Galloway on the common law private nuisance claim; and (3) denying Galloway's postverdict request for attorney fees and costs.  We address these decisions in turn.

### A.  Dismissal of Fraud and Misrepresentation Claims

¶71     As an initial matter, we clarify the nature of the decision on review. On its face, the circuit court granted Schiewe's motion to dismiss the fraud and misrepresentation claims that Galloway asked to include in a consolidated second amended complaint.  However, in substance, the court denied Galloway's implicit motion for leave to amend the second amended complaint by including the fraud and misrepresentation claims in a consolidated second amended complaint.  Both parties address the court's decision under the rubric of a circuit court's exercise of discretion to permit the amendment of a complaint.  We follow their lead.

29

¶72 After an action has been pending for more than six months, "a party may amend [its] pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given at any stage of the action when justice so requires." WIS. STAT. § 802.09(1). Pertinent here, "the interests of justice favor the compliance with court orders designed to prevent the unnecessary protraction of litigation." *Trispel v. Haefer*, 89 Wis. 2d 725, 738, 279 N.W.2d 242 (1979). While "Wisconsin embraces a policy in favor of liberal amendment of pleadings," circuit courts have "'wide discretion in determining whether to permit the amendment of pleadings at any stage of the proceedings.'" *Tietsworth v. Harley-Davidson, Inc.*, 2007 WI 97, ¶25, 303 Wis. 2d 94, 735 N.W.2d 418 (quoted source omitted). "We affirm a [circuit] court's exercise of discretion if the court applied the correct legal standard to the facts of record in a reasonable manner." *Mach v. Allison*, 2003 WI App 11, ¶20, 259 Wis. 2d 686, 656 N.W.2d 766 (2002).

¶73 The relevant procedural facts are set forth above in ¶¶14-20, and we elaborate on some of those facts here. We also present in greater detail the circuit court's rulings initially granting Galloway's request to file a second amended complaint and then "prohibit[ing]" the inclusion of the fraud and misrepresentation claims in a consolidated second amended complaint.

¶74 More than six months after Galloway filed both his initial complaint and his first amended complaint, at the hearing at which the circuit court ruled on Schiewe's motion to dismiss Galloway's claims in the first amended complaint, Galloway asked to file a second amended complaint.

¶75 At that hearing, the circuit court granted Schiewe's motion to dismiss Galloway's zoning violation claim and statutory private nuisance fence claim. The court denied Schiewe's motion to dismiss the interference with property claim under

WIS. STAT. § 844.01 and the common law private nuisance claim. The court concluded that the first amended complaint met the pleading requirements in WIS. STAT. § 844.16 (alleging the plaintiff's interest, the nature of the alleged injury, and the amount of damages sought) in support of the interference with property claim. The court concluded that the complaint also sufficiently alleged the elements of a common law private nuisance claim (obstruction of view that interfered with use and enjoyment of property, caused significant harm to the ordinary person, was intentionally caused, and was unreasonable).

¶76 The circuit court then noted that, while the claims sufficiently pled included both claims founded in law to be tried to a jury and claims founded in equity to be tried by the court, the remedies sought appeared to be founded only in equity. Accordingly, the court granted Galloway's request to file a second amended complaint to clarify the remedies sought and the proposed manner of trial proceedings, but said, "I'm not allowing any[ ]more claims to be introduced." In the written order that followed, the court stated that it granted Galloway's request to file a second amended complaint "for purposes of clarifying the remedies [Galloway] seeks but [Galloway] shall not add additional legal claims."

¶77 In Galloway's counsel's letter to the circuit court filed along with the second amended complaint in December 2020, counsel advised:

> As the Court instructed, we have not added any additional parties or claims. My client does, however, expressly reserve the right to seek permission to amend the complaint to add additional claims and parties as may be necessary to fully litigate this matter and as may be discovered during the course of discovery. Of course, any such requests would comply with WIS. STAT. § 802.09(1).

31

¶78     In the second amended complaint, Galloway added the following allegation that was not in his first amended complaint: that in April 2018 Galloway promised that his new buildings would not block Schiewe's views, and Schiewe promised that he would not block Galloway's views. Galloway also expanded on the allegations he had made in his first amended complaint to show that Schiewe constructed the two pole buildings to coerce Galloway into selling the property to Schiewe, in further support of the claims in the first amended complaint. Galloway alleged the same claims as in the first amended complaint (including the two claims that the circuit court had dismissed, to preserve those claims for appeal), and sought the same remedies as in the first amended complaint.

¶79     The litigation described immediately above took place in the LLC case. In April 2021, Galloway commenced the personal case, filing a new complaint alleging property damage caused by crime and intentional infliction of emotional distress, along with the fraud and misrepresentation claims. The new complaint sought personal damages and attorney fees. The new complaint stated: "Out of respect for the Court's 'no new claims' order, Galloway commences this new action to pursue relief personal to him. Galloway will seek permission to consolidate this action with the LLC Litigation, should the Court deem that appropriate in light of its 'no new claims' order."

¶80     Along with the new complaint, Galloway filed a motion to consolidate the LLC case and the personal case. In his motion, Galloway stated:

> Out of respect for the Court's "no new claims" order, Galloway commenced the Personal Litigation as a new action, instead of seeking leave to amend its pleadings in the LLC Litigation.
>
> … In the Personal Litigation, … Galloway seeks damages personal to him caused by … Schiewe's false

statements and his outrageous and intentional decision to build spite structures to damage not only Galloway's property, but also Galloway himself.

….

For the foregoing reasons, V.A. House and Galloway respectfully request that—should the Court deem it appropriate to revisit its "no new claims order"—the Personal Litigation and LLC Litigation be consolidated and that the consolidated action proceed as one matter.

¶81    The circuit court granted the motion to consolidate. The court held a hearing on Galloway's motion to include the newly alleged claims in a consolidated second amended complaint, and Schiewe's motion to dismiss the newly alleged claims on the ground that those claims violated the court's no new claims order.

¶82    At that hearing, the circuit court denied Galloway's motion to include the fraud and misrepresentation claims in a consolidated second amended complaint, and dismissed those claims without prejudice. The court granted Galloway's motion to include the property damage caused by crime and intentional infliction of emotional distress claims in a consolidated second amended complaint. The court explained that those two claims were supported by previously pleaded allegations and directly related to the factual allegations regarding the interference with property and common law private nuisance claims that the court had allowed to proceed to trial.

¶83    The circuit court then stated that, in contrast, the fraud and misrepresentation claims were based on newly pleaded factual allegations relating to events in early 2018. The court stated that the fraud and misrepresentation claims were based on different circumstances and different legal theories that were factually distinguishable from and not supported by previously pleaded facts and

claims. The court concluded that the fraud and misrepresentation claims were "brought in clear contradiction" of the no new claims order, and prohibited Galloway from including those claims in a consolidated second amended complaint "for that reason." The court noted that it had issued the no new claims order to control the litigation and to keep the litigation on track heading to trial, partly in response to Galloway's insistence in the LLC case on getting to trial quickly because of the continuing trauma he claimed to be suffering. The court indicated that the fraud and misrepresentation claims, by "articulat[ing] a totally different theory []on which th[e] case would be proceeding," contradicted the terms and purpose of the no new claims order.

¶84 Galloway argues that the circuit court erroneously exercised its discretion in three respects when it prohibited him from including the fraud and misrepresentation claims in a consolidated second amended complaint. We reject Galloway's arguments as follows.

¶85 Galloway argues that the circuit court erred in interpreting the no new claims order "to apply broadly to any future amendments of the complaint … rather than solely to the specific amendment that was before the court at the time of the … order." Galloway asserts that the no new claims order, "[v]iewed in context," applied only to the second amended complaint in which Galloway was to clarify the remedies sought and the proposed manner of trial proceedings regarding the claims previously alleged and allowed to go to trial. But no such limitation existed on the face of the order, which allowed Galloway to amend the complaint to clarify the remedies he seeks and stated that he "shall not add additional legal claims." Galloway himself implicitly relied on the absence of any such limitation when he moved to dismiss Schiewe's counterclaim alleging trespass, raised in Schiewe's

34

answer to the second amended complaint, on the ground that the counterclaim violated that order.

¶86    In support of his argument, Galloway also relies on his counsel's letter accompanying the filing of the second amended complaint, quoted above. However, in that letter, counsel acknowledged that any future amendments were subject to the circuit court's "permission."  In denying permission for the inclusion of the fraud and misrepresentation claims, the court explained why the no new claims order applied to the fraud and misrepresentation claims and why Galloway's request to include those claims "circumvent[ed]" that order.  Galloway does not show that the court misused its discretion, only that he seeks, for purposes of his cross-appeal, to interpret the order differently.

¶87    Galloway also argues that the circuit court erred in not recognizing that at least some facts supporting the fraud and misrepresentation claims were alleged in the second amended complaint.[6]  However, this argument does not address the focus of the court's decision on the fact that, in seeking to amend the second amended complaint to include the fraud and misrepresentation claims, Galloway violated the no new claims order prohibiting Galloway from raising new claims.

¶88    Galloway also argues that the circuit court "unreasonably weighed the factors as to whether to permit amendment of the complaint" in its interests-of-justice analysis.  Galloway specifically refers to undue delay, changed circumstances, and lack of prejudice, but he cites no Wisconsin law requiring the

---

[6] We observe that Galloway's counsel acknowledged in the circuit court that many if not all of the allegations supporting the fraud and misrepresentation claims had not been pleaded in the second amended complaint.

court to consider these factors. Moreover, he does not address the actual reason that the court gave for its decision, which was that the raising of the fraud and misrepresentation claims violated the court's no new claims order. *See Trispel*, 89 Wis. 2d at 738 ("the interests of justice favor the compliance with court orders designed to prevent the unnecessary protraction of litigation"). In any event, Galloway does not point to, and we do not readily discern, any part of the record showing that he made an argument based on these factors in the circuit court and, therefore, he has forfeited them on appeal. *See Northbrook Wis., LLC v. City of Niagara*, 2014 WI App 22, ¶20, 352 Wis. 2d 657, 843 N.W.2d 851 ("Arguments raised for the first time on appeal are generally deemed forfeited.").

¶89 In sum, Galloway fails to show that the circuit court erroneously exercised its discretion when it prohibited him from including the fraud and misrepresentation claims in a consolidated second amended complaint.

## B. Disallowance of Punitive Damages

¶90 Punitive damages "'are designed to hurt in order to punish and to deter.'" *Tucker v. Marcus*, 142 Wis. 2d 425, 437, 418 N.W.2d 818 (1988) (quoted source omitted); *see also* WIS. STAT. § 895.043(3) (to receive punitive damages, a plaintiff must show "that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff"). But, "punitive damages cannot be awarded in the absence of actual damage." *Tucker*, 142 Wis. 2d at 438-39. Accordingly, "punitive damages are not available whe[n] there has been no 'award' of actual damages," meaning when there has been no award of

compensatory damages "recoverable in accordance with an order for judgment."[7] *Id.* at 439. In other words, punitive damages are not available in the absence of the "actual recovery of compensatory damages for injury suffered." *Id.* at 440-41; *see also* **Groshek v. Trewin**, 2010 WI 51, ¶¶4, 29, 33, 325 Wis. 2d 250, 784 N.W.2d 163 (adopting rule in **Tucker** that punitive damages are not available when "there is no award of compensatory damages"). "Whether punitive damages are available is a question of law and is thus reviewed de novo." **Groshek**, 325 Wis. 2d 250, ¶11.

¶91 Here, the jury awarded compensatory damages on Galloway's private nuisance claim for the loss of fair market value; the jury awarded no compensatory damages for loss of use or enjoyment. Galloway subsequently requested that the circuit court order abatement of the nuisance by ordering removal of the two pole buildings that caused the nuisance. In its order for entry of judgment, consistent with its oral rulings at the remedies hearings, the circuit court: granted Galloway's motion for abatement, ordering the removal of Schiewe's two pole buildings; disallowed the jury's compensatory damages award based on loss of fair market value because the reduction in fair market value due to the construction of the two pole buildings would be remedied by their removal; and disallowed the jury's punitive damages award as precluded by the disallowance of the compensatory damages award.

---

[7] The Restatement (Second) of Torts defines "compensatory damages" as "the damages awarded to a person as compensation, indemnity or restitution for harm sustained by [the person]," RESTATEMENT (SECOND) OF TORTS § 903 (1979), and this has long been the law in Wisconsin, *see White v. Benkowski*, 37 Wis. 2d 285, 290, 155 N.W.2d 74 (1967) ("compensatory damages are given to make whole the damage or injury suffered by the injured party"). *Cf.* **Vogel v. Grant-Lafayette Elec. Coop.**, 201 Wis. 2d 416, 423, 548 N.W.2d 829 (1996) ("This court has previously adopted the definition of private nuisance set forth in the Restatement (Second) of Torts (1979).").

¶92    Galloway makes three arguments in support of his challenge to the circuit court's disallowance of the jury's punitive damages award: (1) Galloway suffered a compensable loss of use or enjoyment of his property as a matter of law; (2) there is no common law bar to punitive damages in the circumstances here in which Galloway did not receive the jury's compensatory damages award because of his election of the remedy of abatement; and (3) if there is a common law bar, we should clarify the law in light of the "modern realities of practice and procedure." We address and reject these arguments in turn.

### 1.  No Compensable Loss of Use or Enjoyment

¶93    Galloway argues that he suffered a compensable loss of use or enjoyment of his property as a matter of law and that the circuit court erroneously concluded the contrary.  We reject this argument as unsupported by the record.

¶94    As stated, the jury awarded compensatory damages in the amount of $300,000 for loss of fair market value of the property, and no compensatory damages for loss of use or enjoyment of the property.  The circuit court determined that Galloway's requested remedy of abatement requiring the removal of the two pole buildings eliminated the basis for the reduction in fair market value and, accordingly, amended the compensatory damages award to zero.

¶95    Galloway argues that he suffered loss of use and enjoyment of his property as a matter of law, because it was that loss that accounted for the loss of fair market value.  This argument mischaracterizes the record.  As summarized above, Galloway testified about the loss of views due to the construction of the two pole buildings as interfering with the use and enjoyment of his property, one of the appraisers testified that it was the loss of views that caused the loss of fair market

value, and the jury found that Galloway suffered a loss of fair market value, but no compensable loss of use and enjoyment, of his property. In other words, the jury found that the only damage that Galloway suffered was that his property was worth less, and that he himself suffered no loss of use and enjoyment of his property. Galloway's argument that he necessarily also suffered the loss of use or enjoyment has no support in the record.

¶96 Galloway argues that the jury likely "lumped … together" damages for loss of use or enjoyment with the damages it awarded for loss of fair market value. In support of this argument, Galloway cites the circuit court's response to the jury's question about the verdict during its deliberations. The verdict form asked the jury, if it found a nuisance, to answer the following question:

> What sum of money will fairly and reasonably compensate
> [Galloway] for the nuisance:
>
> Loss of use and enjoyment through date of trial:
> _____ ($)
>
> Loss of fair market value:
> _____ ($)

During its deliberations, the jury asked: "Do we need to assign value to loss of enjoyment & use AND fair market value OR one or the other if appropriate[?]" The court responded: "You may provide answers to the damages question … by assigning either: Loss of Fair Market Value or Loss of past use and enjoyment or Loss of both fair market value and loss of past use and enjoyment." There is no part of this response that instructed the jury that it could group values for both losses under one heading or the other.

¶97 Galloway also supports this "grouping together" argument as a possible explanation for why the $300,000 awarded for loss of fair market value

exceeded his appraiser's testimony that the loss of fair market value was $216,000. We reject this aspect of his argument as speculative.

¶98    Galloway further argues that he is entitled to compensatory damages because he will continue to suffer loss of use or enjoyment of his property from the time of trial through the time of abatement. We have already rejected this argument's premise—that Galloway suffered loss of use or enjoyment of his property through the date of trial. There is no basis for damages for his continued suffering of a loss that he had not suffered in the first instance.

## 2.  Common Law Bar to Punitive Damages

¶99    Galloway argues that the rule articulated in *Karns v. Allen*, 135 Wis. 48, 58, 115 N.W. 357 (1908), that a court acting in equity may award only compensatory damages and may not award punitive damages, does not bar punitive damages here. The circuit court here did reference the substance of the *Karns* rule and expressed its concerns with the rule's continued application. However, the court ultimately disallowed punitive damages based on the rule articulated in *Tucker*, 142 Wis. 2d at 439, and reaffirmed in *Groshek*, 325 Wis. 2d 250, ¶¶4, 28-30, that punitive damages cannot be awarded in the absence of an award of compensatory damages. Accordingly, we do not address Galloway's arguments that the *Karns* rule does not apply or that we should "clarify" or "eschew" that rule. *See Groshek*, 325 Wis. 2d 250, ¶¶29-30 (ruling that no punitive damages could be awarded in that case because no compensatory damages were awarded, and leaving the continued vitality of the *Karns* rule "for another day").

¶100  Galloway also argues that the rule articulated in *Tucker* and reaffirmed in *Groshek*, barring punitive damages when no compensatory damages

have been awarded, does not bar punitive damages here, for four reasons. First, Galloway asserts that here, compensatory damages "were sought, awarded, and legally recoverable." It is undisputed that Galloway sought compensatory damages and that the jury awarded compensatory damages. But, as we now explain, the record shows that compensatory damages were not recoverable.

¶101 The compensatory damages award was for the injury caused by the construction of the two pole buildings, and the jury found that such injury was only a loss of the fair market value of Galloway's property. The circuit court determined that such injury, loss of fair market value, would be eliminated by the removal of the two pole buildings required by the court's abatement order; that is, the fair market value of Galloway's property would no longer be impaired.[8] In other words, with the abatement order, the injury found by the jury no longer existed. Indeed, Galloway agreed in the circuit court that any loss of fair market value awarded by the jury would be eliminated by abatement.

¶102 Consistent with its determination, the circuit court disallowed the compensatory damages award in its order for judgment. Accordingly, Galloway lost the legal right to recover the compensatory damages. *See Tucker*, 142 Wis. 2d at 438-39 (concluding that, although the jury found "there had been injury suffered," "punitive damages were inappropriately allowed" because the plaintiff could not recover "actual damages" "in accordance with an order for judgment"). Contrary to Galloway's assertion, there was no "actual recovery of compensatory damages

---

[8] The circuit court explained its reduction of the jury's compensatory damages award to zero as follows. The jury's award of compensatory damages was based exclusively on loss of fair market value, and that loss of value was attributed to the existence of the two pole buildings. When the court ordered that the two pole buildings be razed, the basis for the compensatory damages award was removed, and, therefore, the court had no basis "to act upon the Jury's award of damages."

for injury suffered." *See id.* at 440; *cf. id.* at 455 (Heffernan, C.J., dissenting) ("Today's majority holds that … no punitive damages may be awarded in the absence of a recovery for compensatory damages.").

¶103 Second, Galloway asserts that the abatement ordered by the circuit court "was a form of compensatory damages" because abatement compensated him for the loss of his property's fair market value by increasing its fair market value. In support of this assertion, Galloway cites the definition of compensatory damages adopted by Wisconsin courts, *see* footnote 7 above, as including "compensation, indemnity, and restitution." Galloway seems to suggest that this asserted consequence of abatement constitutes compensation under this definition. We question the logic of such a suggestion. More significantly, the underlying assertion misrepresents the record. As explained above, the court's abatement order eliminated the jury's compensatory damages award. Abatement restored Galloway's property's fair market value, rather than compensating him for that loss.

¶104 Third, Galloway asserts that he was entitled to punitive damages, regardless of the common law bar, under the real estate statutes, WIS. STAT. §§ 840.01, 840.03, 844.01, 844.19, and 844.20, which, according to Galloway, provide for equitable remedies and damages in real estate actions.[9] Galloway seems to suggest that these statutes abrogate the common law. *See, e.g.*, ***Fuchsgruber v.***

---

[9] For example, both damages and equitable remedies are available under WIS. STAT. § 844.01(1) (permitting any person owning or claiming interest in real property to bring an action claiming interference with the property or the person's interest, "to redress past injury, to restrain further injury, to abate the source of injury, or for other appropriate relief"), and WIS. STAT. § 840.03, *see **Country Visions Coop. v. Archer-Daniels-Midland Co.***, 2020 WI App 32, ¶44 n.13, 392 Wis. 2d 672, 946 N.W.2d 169 (noting that compensatory damages and equitable remedies are available under § 840.03(1), which permits "[a]ny person having an interest in real property [to] bring an action relating to that interest, in which the person may demand … singly, or in any combination" 15 remedies including equitable remedies and damages).

*Custom Accessories, Inc.*, 2001 WI 81, ¶25, 244 Wis. 2d 758, 628 N.W.2d 833 ("[A] statute does not abrogate a rule of common law unless the abrogation is clearly expressed and leaves no doubt of the legislature's intent…. To accomplish a change in the common law, the language of the statute must be clear, unambiguous, and peremptory."). But Galloway does not develop an argument to that effect, and we reject this assertion on that basis.

¶105 Fourth, Galloway asserts that "attorney fees or nominal damages, if awarded, would constitute compensatory damages" entitling him to punitive damages. We address and reject his argument that the circuit court erroneously denied his request for attorney fees separately below. We reject as unsupported Galloway's assertion here that the court erroneously "failed to properly consider" his request for nominal damages for the harm that he will continue to suffer "from trial until abatement." As explained above, the only harm found by the jury was loss of fair market value, and that harm was eliminated by the court's abatement order.

¶106 In sum, Galloway fails to show that the circuit court erroneously disallowed punitive damages.

## C. Denial of Attorney Fees

¶107 Galloway argues that the circuit court erroneously exercised its discretion in denying his request for attorney fees pursuant to *Nationstar Mortgage LLC v. Stafsholt*, 2018 WI 21, 380 Wis. 2d 284, 908 N.W.2d 784. In *Nationstar*, our supreme court ruled that circuit courts may award attorney fees to prevailing parties in equitable actions "as part of an equitable remedy 'in exceptional cases and for dominating reasons of justice.'" *Id.*, ¶44 (quoted source omitted). "The circuit

court's decision to grant equitable remedies is reviewed for an erroneous exercise of discretion." *Id.*, ¶23. "A circuit court properly exercises discretion when it applies a correct legal standard to the facts of record" and "articulate[s] its reasoning" to reach a result that a reasonable judge could reach. *Id.*, ¶¶35, 37.

¶108 *Nationstar* involved a foreclosure action against a homeowner for defaulting on a mortgage. *Id.*, ¶10. After a bench trial, the circuit court found that the servicer of the loan improperly caused the property owner to default through the servicer's poor record-keeping and business practices, and that the property owner acted throughout in good faith and reliance on the servicer's misrepresentations. *Id.*, ¶35. The court concluded that the egregious nature of the servicer's conduct in handling the mortgage and foreclosure action entitled the property owner to attorney fees. *Id.* The supreme court concluded that the circuit court properly exercised is discretion in awarding attorney fees "'for dominating reasons of justice,'" because the servicer's misrepresentations caused the dispute, the servicer filed the foreclosure action when the property owner followed the servicer's directions, and the servicer "doubled down on its bad faith … before trial." *Id.*, ¶37 (quoted source omitted).

### 1. Additional Background

¶109 The circuit court addressed Galloway's request for attorney fees at two hearings on remedies and one telephone status conference. At the first remedies hearing, the court considered the following in support of an award of attorney fees: the jury found that Schiewe acted with malicious disregard of Galloway's rights and that Schiewe intended to but did not cause Galloway emotional harm; the evidence supported the jury's findings, specifically that Schiewe acted through threats and construction of the two pole buildings to compel Galloway to sell his property to

Schiewe; Galloway could not recover the $1,000,000 in punitive damages awarded by the jury; and, after trial, Schiewe erected the fuel depot between the two pole buildings.

¶110 The circuit court then considered the factors against awarding attorney fees: *Nationstar* involved parties in uneven litigation positions with uneven resources and a company acting with, at best, institutional malfeasance; here, the parties were on a substantially equal financial and practical footing, given how much they each spent on their buildings and attorneys; Galloway unsuccessfully tried to add new claims in violation of the court's no new claims order and lost at trial on two of his three claims for compensation; Schiewe incurred significant litigation expenses defending claims that were disallowed and must pay to take down the two pole buildings, though he put himself in that position; Galloway constructed in his own sight line his own pole buildings on his other property, which were as large as or larger than Schiewe's two pole buildings; and Galloway's independent medical examination conduct was obstructive. The court concluded that, overall, Galloway was not like the property owner in *Nationstar*, and that difference and the other distinguishing circumstances established that attorney fees were not appropriate.

¶111 At the telephone status conference, the circuit court elaborated on its finding that the parties were in substantially equal financial positions. The court explained that what was important was not which of the parties had more resources than the other, but that both parties "have resources that are significantly in excess of what most individuals would have at their disposal." The court noted that Galloway had spent eight to ten million dollars on his property, which required significant resources, and that the record showed that Schiewe also had significant resources. Accordingly, the court considered them to be on equal footing and in

comparatively equal positions. The court contrasted the parties' relative financial positions with *Nationstar*, in which a national corporation placed a mortgagor "in a position of great fiscal inequity." The court noted that the great gap in the corporation's and the mortgagor's relative financial positions was important to the circuit court and our supreme court, and that no such gap was present here.

¶112 At the second remedies hearing, the circuit court reiterated that *Nationstar* involved parties in substantially different financial and organizational positions—a "corporate giant" versus "a simple … mortgagor"—while here the parties were on a financially equal footing and relatively equally positioned. The court noted that *Nationstar* involved a national corporation that abused its relatively stronger position, and a mortgagor who was "given a four-year runaround" and was "flat-out misled." The court stated that, in contrast, while Schiewe's conduct here was worse than Galloway's, Galloway's conduct was also troubling in terms of equity: (1) the focus of the case was the loss of Galloway's views of open fields, yet he built within his views a group of pole buildings of the same type that he was critical of Schiewe for having built; (2) Galloway engaged in problematic obstructionist conduct at his independent medical examination regarding the intentional infliction of emotional distress claim that the jury rejected; and (3) Galloway filed a new lawsuit that violated the court's no new claims order in the LLC case involving the two pole buildings, and then filed another new lawsuit after verdict with new legal theories. The court concluded that this case boiled down to what the jury found—that Schiewe was wrong and caused a loss of Galloway's property's fair market value—but that, given Galloway's conduct and litigation positions, the overall equities did not support awarding attorney fees under *Nationstar*.

2.  Analysis

¶113    The above summary of the circuit court's decision to deny Galloway's request for attorney fees under *Nationstar* establishes that the court applied the proper standard of law to the facts of record, explained its reasoning, and reached a conclusion that a reasonable judge could reach.  In other words, the record establishes that the court did not erroneously exercise its discretion in declining to award attorney fees in equity under *Nationstar*.  We now explain why Galloway's arguments to the contrary fail.

¶114    Galloway argues that the circuit court erred as a matter of law by balancing the equities contrary to *Nationstar*, which, according to Galloway, focused solely on the bad faith conduct of the wrongdoer and the need to make the victim whole.  This argument interprets *Nationstar* too narrowly, as imposing a two-factor test that mandates attorney fees based on only those two factors.  To the contrary, our supreme court in *Nationstar* stressed the need for a circuit court to consider all of the circumstances in order to determine whether, in the exercise of its discretion, attorney fees are warranted.  *See Nationstar*, 380 Wis. 2d 284, ¶¶28, 30 (a circuit court acting in equity has "broad flexibility" in awarding attorney fees in order to "'meet the requirements'" of the case before it (quoted source omitted)).

¶115    This argument also disregards both the detailed findings by the circuit court in *Nationstar* regarding both of the parties' actions and the court's implicit balancing of the equities between them based on those findings.  *See id.*, ¶¶35-38.  It was only after engaging in that fact-finding and balancing that the circuit court and our supreme court determined that it was appropriate to award attorney fees to make the mortgagor whole.  *Id.*  Here, the circuit court also made findings, consistent with the jury's verdict and the evidence presented at trial, that Schiewe's

47

conduct was in bad faith and malicious, such that abatement was an appropriate remedy. But, as to attorney fees, the court explained that the circumstances here differed in significant ways from the circumstances in *Nationstar*, and that, in balancing the equities, those differences warranted a different outcome.

¶116 Galloway also relies on inapposite case law to support his argument that there should not be any balancing of the equities because Schiewe acted intentionally in creating the private nuisance. *See Bruck Law Offices, S.C. v. KSMS Our House, LLC*, No. 2018AP1118, unpublished slip op., ¶28 (WI App Dec. 26, 2018) (in the course of finding facts showing that a party in a garnishment action acted in bad faith, the court considered the equities including the facts relating to that party's flagrant abuse of the judicial process and the other party's good faith conduct in response); *First Credit Corp. v. Behrend*, 45 Wis. 2d 243, 250, 172 N.W.2d 668 (1969) (when the borrower lied in applying for the loan and the lender knew about the lie, the court declined to balance equities in determining that a debt was properly discharged in bankruptcy because both the borrower and the lender acted in bad faith); *Laatsch v. Derzon*, 2018 WI App 10, ¶26, 380 Wis. 2d 108, 908 N.W.2d 471 (applying case law "permitting a circuit court to exercise its equitable authority to surcharge a trustee, guardian, or personal representative for attorney fees incurred by another party as a result of the trustee's, guardian's, or personal representative's fraud, bad faith, or deliberate dishonesty").

¶117 Galloway argues that, because "Schiewe ha[d] no equity," the scale necessarily tipped in Galloway's favor. However, *Nationstar* does not compel such a result, and we see no language in *Nationstar* that takes away a circuit court's discretion solely because one party has acted in bad faith. Galloway also argues that the equities were all in Galloway's favor because he was in a significantly worse

financial position from litigating to protect his property rights against Schiewe's bad faith and, therefore, the circuit court should have awarded attorney fees in order to restore him to the financial position he was in before Schiewe constructed the two pole buildings. Again, we see no language in *Nationstar* that requires a circuit court to award attorney fees solely because one party's bad faith conduct resulted in the other party's being in a significantly worse financial position. Rather, the analysis in *Nationstar* makes it clear that a proper exercise of discretion requires that the circuit court consider all of the relevant facts and equities regarding the conduct and relative positions of the parties in order to determine whether, looking at the circumstances as a whole, the circumstances amount to an "'exceptional case[]'" such that "'dominating reasons of justice'" warrant an award of attorney fees. *See Nationstar*, 380 Wis. 2d 284, ¶44 (quoted source omitted).

¶118 Galloway's "matter of law" argument is essentially an argument that the circuit court here incorrectly balanced the equities and should have exercised its discretion differently. We could simply note that each error that Galloway asserts the court made is merely an argument that the court should have considered and balanced a fact differently. However, for the sake of completeness, we briefly address and reject each asserted error.

¶119 Galloway argues that the circuit court erred in saying that both parties were responsible and faulting both parties. However, the court clearly stated that, as found by the jury, Schiewe was responsible. The court did not "fault" Galloway, but instead addressed facts other than "fault" that tipped the equities against Galloway.

¶120 Galloway argues that the circuit court erred in considering that Galloway did not succeed on all of his claims. However, Galloway does not cite

relevant legal authority supporting the proposition that the court erred in considering that Galloway did not prevail on all of his claims as part of the court's consideration of the equities. The case law that Galloway cites interprets federal and state statutes providing for attorney fee awards to a prevailing party. *See Friends of Frame Park, U.A. v. City of Waukesha*, 2022 WI 57, 403 Wis. 2d 1, 976 N.W.2d 263 (interpreting "prevailing party" in the Wisconsin Public Records Law); *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health and Hum. Res.*, 532 U.S. 598 (2001) (interpreting fee-shifting provisions in the Fair Housing Act and the Americans with Disabilities Act). Galloway cites no case law applying those interpretations to the common law rule allowing attorney fee awards in equitable actions "'in exceptional cases and for dominating reasons of justice.'" *See Nationstar*, 380 Wis. 2d 284, ¶44 (quoted source omitted).

¶121 Galloway argues that the circuit court erred in considering that Schiewe would not receive attorney fees for defending against Galloway's unsuccessful claims. However, the court expressly stated that Schiewe's "attorney's fees are not in any way, shape, or form able to be considered." The record read as a whole confirms that the court did not accord this any weight in considering the factors for and against awarding attorney fees.

¶122 Galloway argues that the circuit court erred in considering that Schiewe has to raze his two pole buildings, which cost Schiewe "close to three quarters of a million dollars" to construct. The record does show that the court referenced this fact. However, the record also shows that the court acknowledged that "Schiewe put himself in that position." And the record read as a whole shows that the court considered this fact in support of its determination that Schiewe and Galloway were in relatively equal financial positions in terms of the money they

spent to develop their properties. Galloway does not explain why the court erred in considering this evidence regarding the parties' financial positions for that purpose.

¶123 Galloway argues that the circuit court erred in considering Galloway's litigation conduct, specifically, that there was no factual basis for the court's comments regarding the independent medical examination and Galloway filing new claims after the no new claims order. However, the court addressed Galloway's independent medical examination after viewing the video recording of that examination, and noted that "it was incredibly problematic and reflective of the way that Mr. Galloway was attempting to impede the rightful process that Mr. Schiewe and his counsel had to discover what was taking place in the case and to get an understanding of the emotional distress claim." The court had imposed sanctions as a result of Galloway's misconduct. Galloway's attempts to explain his conduct during that examination do not render the court's assessment of his conduct clearly erroneous. And, we have explained above why the court did not erroneously exercise its discretion in determining that the new claims violated the no new claims order.

¶124 Galloway argues that the circuit court erred in considering that Galloway constructed several pole buildings on his 30-acre property in the sight line of his 1.2-acre property (on which he had constructed his house), and in comparing them to the pole buildings constructed by Schiewe as equally "scarring" the agricultural landscape. However, while Galloway would characterize his own buildings differently, he does not dispute that all of the buildings were pole buildings and were in the sight line of his 1.2-acre property.

¶125 Galloway argues that the circuit court erred in considering Schiewe and Galloway as financial equals. The record summarized above establishes that

the court extensively explained why it found that Schiewe and Galloway were generally financial equals in terms of their investments in their properties and their expenditures on this litigation, and more importantly, that they were not positioned at all similarly to the parties in *Nationstar* in terms of their relative financial and economic resources. Galloway argues that the parties' relative financial positions are not a legal factor under *Nationstar*, but that consideration clearly underlies several of the circuit court's factual findings in that case and the circuit court's and the supreme court's consideration of the need, in balancing the equities, to make the mortgagor whole. *See Nationstar*, 380 Wis. 2d 284, ¶¶35-36.

¶126 Finally, Galloway argues that the circuit court erred in not awarding attorney fees based solely on what he calls Schiewe's "litigation misconduct," specifically, Schiewe's placing a fuel depot between the two pole buildings after the jury returned its verdict. However, the record shows that the court did consider Schiewe's placement of the fuel depot as a factor that weighed against Schiewe. That the court did not determine that this factor outweighed the other factors it considered in balancing the equities was within its discretion.

¶127 In sum, Galloway fails to show that the circuit court erroneously exercised its discretion in denying his request for attorney fees.

### III. Galloway's Appeal in Appeal No. 2024AP2255

¶128  Galloway argues that the circuit court erroneously exercised its discretion in denying his motion for relief from judgment under WIS. STAT. § 806.07(1)(c), (g), and (h).[10]

¶129  Under WIS. STAT. § 806.07(1), a circuit court may "relieve a party or legal representative from a judgment, order or stipulation" if the circumstances satisfy one of the statute's various subsections.  Under the subsections at issue here, the moving party must show that relief is warranted for one of the following reasons: "(c) Fraud, misrepresentation, or other misconduct of an adverse party;" "(g) It is no longer equitable that the judgment should have prospective application;" or "(h) Any other reasons justifying relief from the operation of the judgment." § 806.07(1).

---

[10]  Galloway also argues that this court should consider four documents as supplements to the record.  Galloway had moved in the circuit court to supplement the record to include the four documents, and the court denied the motion because there was no need for the information in the documents to be in the record.  Galloway then filed the same motion in this court, and we granted his motion to supplement the record to include the four documents and directed the parties to address in their briefs whether we should consider the documents.

The four documents include two notices of hearing and two notices of electronic service. Galloway asserts that the four documents show that the circuit court proceedings on his WIS. STAT. § 806.07 motion "were conducted in a very time-compressed manner," and offers them to support his due process argument regarding the court's denial of his § 806.07 motion, which we address later in this opinion.  Schiewe responds that it is apparent from information already in the record that the circuit court proceedings were conducted "in a very time-compressed manner" and, therefore, there is no need for the information in the four documents to be in the record.  Schiewe argues that the circuit court properly exercised its discretion in denying Galloway's motion to supplement the record on that basis.

We do not review the circuit court's denial of Galloway's motion.  Rather, having granted Galloway's motion to supplement, we accept Galloway's references in his appellate briefing to the information in the documents.  However, as apparent in our discussion later in this opinion, that information does not affect our analysis of Galloway's due process argument regarding the circuit court proceedings based on the information already in the record.

¶130 We review a circuit court's decision on a motion for relief from judgment or order for an erroneous exercise of discretion. *Werner v. Hendree*, 2011 WI 10, ¶59, 331 Wis. 2d 511, 795 N.W.2d 423. "The term 'discretion' contemplates a process of reasoning which depends on facts that are in the record or are reasonably derived by inference from the record, and yields a conclusion based on logic and founded on proper legal standards." *Shuput v. Lauer*, 109 Wis. 2d 164, 177-78, 325 N.W.2d 321 (1982). As we explain, Galloway fails to show that the circuit court in this case did not exercise its discretion on the basis of the facts, logic, and proper legal standards.

## A. Additional Background

¶131 Galloway filed a motion for relief from judgment under WIS. STAT. § 806.07 on July 19, 2024. Galloway alleged that since the entry of the October 27, 2023 judgment, Schiewe had built a fuel depot between his two pole buildings. Galloway asked that the circuit court amend its abatement order to include the fuel depot, reconsider its denial of attorney fees in light of the new construction, and allow the statutory private nuisance fence claim based on the fuel depot.

¶132 On July 24, 2024, the circuit court conducted an off-the-record telephone conference with the parties. At that conference, the court identified its concerns regarding the motion for relief and scheduled a hearing for July 29 to address its concerns and to determine whether it would deny the motion on its face or whether further hearings were necessary to decide the motion. On July 26, Galloway filed a brief addressing the court's concerns, including whether issue preclusion or judicial estoppel applied to bar Galloway's motion for relief from judgment. In his brief, Galloway clarified that he was asking the court to declare

the fuel depot to be a continuation of the common law private nuisance that the jury already found existed. Schiewe filed a brief in opposition to the motion for relief.

¶133 The circuit court denied Galloway's motion for relief at the hearing on July 29. We relate in detail the court's remarks explaining its discretionary decision. The court began by summarizing how it viewed Galloway's motion in the context of the "no build" restriction that the court had previously proposed to order. The court stated that it had restored Galloway's pristine views by ordering abatement of the two pole buildings and proposed to protect those views by also entering a "no build" restriction, but that Galloway asked the court not to enter the "no build" restriction order. The court noted that, when Galloway made that request, the court warned Galloway that, without the "no build" restriction order, Schiewe "[was] not under any legal restriction [not] to put up any[ ]more buildings," and Schiewe heard the court give Galloway that warning. The court continued:

> Mr. Galloway now comes back, and he has taken a position that, legally speaking, is 180 degrees removed from where he was…. [A]fter I removed that ["no build"] restriction at Mr. Galloway's request, we have another structure on the property…. Now he wants me to look at the fact that there is an additional structure, and, apparently, what he is now saying is to "go back and yet again look at *Nation[star]*, because now you see you can further find that Mr. Schiewe is acting in a degree of nefarious intention, because there is an additional building, and this is all the more reason for you to totally reverse the exhaustive analysis that you went through, finding that I not get my attorney's fees, and now this is an additional fact that you have to consider[.]"

The court concluded, "That's judicial estoppel in a nutshell."

¶134 Turning to issue preclusion, the circuit court stated that it had heard arguments about the fuel depot in the postverdict proceedings when construction of

55

the depot had begun, and it had made detailed findings and provided detailed reasons supporting its denial of Galloway's request to reconsider the court's attorney fees and other decisions in light of that construction. The court concluded that the fact that the construction was now completed was not a distinction that rendered issue preclusion inapplicable.

¶135    The circuit court further stated that Galloway could not inject his claims concerning the fuel depot in this action because the jury had not made any findings regarding the fuel depot. The court explained that, if it were to grant the relief that Galloway requested, it would essentially be applying the jury's prior verdict to new facts about which the jury had made no findings.

¶136    The circuit court further explained that WIS. STAT. § 806.07 did not apply because:

> [W]hat Mr. Galloway wants me to do is to not provide relief from the judgment, but to totally change it, to change my mind that he is not entitled to attorney's fees under *Nation[star]*…. Mr. Galloway is wringing his hands to get to his attorney's fees so that he, no doubt, can argue that he gets his punitive damages.

¶137    Addressing the specific subsections under which Galloway brought his motion, the circuit court explained that there was no fraud as required by WIS. STAT. § 806.07(1)(c), because Schiewe merely proceeded to build a structure that he had a legal right to build. Whether Schiewe engaged in misconduct in doing so raised new factual issues as to whether the fuel depot was a nuisance, "to be determined another day." As to misconduct, the court also reiterated that Schiewe heard the court tell Galloway that, without the "no build" restriction order, there was nothing that prohibited Schiewe from putting up any more buildings.

¶138   The circuit court explained that WIS. STAT. § 806.07(1)(g) would apply only if Schiewe wanted relief from the judgment's abatement order, and did not apply to what was essentially Galloway's request to reconsider the court's denial of attorney fees.

¶139   The circuit court also explained that the motion on its face, which at most argued that Schiewe built a structure that "maybe" he should have not built, did not establish the extraordinary circumstances necessary to warrant relief under WIS. STAT. § 806.07(1)(h).

¶140   The circuit court entered a written decision and order denying the motion for relief from judgment on August 6, 2024.

*B.  Analysis*

¶141   We discern three parts to the circuit court's ruling.  One part is the court's conclusion that the motion is on its face barred by issue preclusion and judicial estoppel.  The second part is that the motion fails because it is based on new facts that occurred after the jury returned its verdict and the court entered its judgment.  The third part is the court's conclusion that, as a matter of law, the motion on its face does not establish grounds for relief under WIS. STAT. § 806.07(1)(c), (g), or (h), and that no further hearings or argument were necessary in that respect.

¶142 On appeal, Galloway does not challenge the circuit court's conclusions based on issue preclusion and on the raising of new facts not considered by the jury.  Accordingly, we deem Galloway to concede that these conclusions by the court are correct, and we affirm the court's denial of his motion on that basis. *See West Capitol, Inc. v. Village of Sister Bay*, 2014 WI App 52, ¶49, 354 Wis. 2d 130, 848 N.W.2d 875 (explaining that "[f]ailure to address the grounds on which

the circuit court ruled constitutes a concession of the ruling's validity"). For the sake of completeness, we briefly address the challenges Galloway does make as follows.

¶143 Galloway challenges the circuit court's conclusion that was based on judicial estoppel. As presented above, the court's remarks related to judicial estoppel focused on the following: Galloway was now taking a position in favor of a "no build" restriction order prohibiting Schiewe's new construction; this new position was inconsistent with his earlier position opposing such an order; and the court adopted his earlier position by acceding to his request not to enter the "no build" restriction order originally proposed by the court. *See* **State v. Ryan**, 2012 WI 16, ¶33, 338 Wis. 2d 695, 809 N.W.2d 37 (the three elements of judicial estoppel are: (1) the later position is clearly inconsistent with the earlier position; (2) the facts are the same in both cases; and (3) the party to be estopped convinced the court to adopt its earlier position). Galloway's arguments are difficult to parse, but we address them as best we understand them and explain why they fail.

¶144 Galloway appears to argue that the circuit court overlooked specific aspects of the complicated and many-tentacled proceedings in this case in making its findings as to Galloway's positions during those proceedings. However, Galloway does not identify any part of the record showing that the court's findings—as to Galloway's position regarding the "no build" restriction when the court proposed it, his request that the court not order that restriction, and his position now seeking in effect such a restriction—are clearly erroneous. Galloway also appears to argue that Galloway had legitimate reasons for opposing the court's proposed "no build" restriction and, therefore, his position then could not be a basis for concluding that he was judicially estopped from seeking a remedy inconsistent

with that position now. However, Galloway does not cite legal authority supporting the proposition that judicial estoppel cannot apply because the party to be estopped had reason to take the earlier position. Galloway further argues that the court did not explain the legal basis for its judicial estoppel conclusion, but Galloway does not specify which element of judicial estoppel the court did not address.[11] The court's remarks as presented above included a complete explanation of that basis.

¶145 Galloway also argues that the circuit court erred in addressing why, taking the motion on its face, it did not establish a basis for relief under WIS. STAT. § 806.07(1)(c), (g), or (h). Galloway does not address the substance of this part of the court's ruling. Instead, he argues that the court proceeding with this facial analysis deprived him of due process because he did not have adequate notice of or opportunity to respond to this part of the court's ruling, particularly in the compressed time period from when Galloway filed his motion to when the court made its ruling. We do not reach this argument because we affirm based solely on the issues that the court squarely put before the parties at the telephonic conference before the hearing on the motion, and which Galloway fully briefed before the hearing.

¶146 In sum, Galloway fails to show that the circuit court erroneously exercised its discretion in denying his motion for relief from judgment.

---

[11] For the first time in his reply brief, Galloway argues why the three elements of judicial estoppel were not satisfied. We do not consider those arguments because they come too late. *See* *Bilda v. County of Milwaukee*, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661 (stating the "well-established rule" that this court generally does not consider arguments raised for the first time in the reply brief).

59

**IV. Galloway's Appeal in Appeal No. 2023AP986**

¶147 Galloway challenges the circuit court's dismissal of the complaint in the 2022 case that he commenced after the trial in the 2019 case on his claims relating to Schiewe's construction of the two pole buildings.[12] To repeat, the new complaint alleges fraud and misrepresentation claims relating to Schiewe's allegedly false promise not to build on the portion of Schiewe's property within the sight line of Galloway's property, and Schiewe's allegedly false representations supporting that promise, in return for Galloway's promise not to build on the portion of his property within the sight line of Schiewe's property. Galloway argues that the court erroneously dismissed the new complaint as barred by claim preclusion. We now summarize the applicable standard of review and legal principles, next present in detail the allegations in the new complaint and the circuit court's ruling, and then explain our conclusion that claim preclusion bars the claims in the new complaint and reject Galloway's arguments to the contrary.

¶148 Whether claim preclusion applies is a question of law that we review independently. *Kruckenberg v. Harvey*, 2005 WI 43, ¶17, 279 Wis. 2d 520, 694 N.W.2d 879. "The doctrine of claim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences." *Id.*, ¶19. "When the doctrine of claim preclusion is applied, a final judgment on the merits will ordinarily bar all matters 'which were litigated or which might have been litigated in the former proceedings.'" *Id.* (quoted source omitted). "In effect, the doctrine of claim

---

[12] For ease of reading, in this section we generally refer to the 2022 case as the new case and to the complaint filed in that case as the new complaint; and we generally refer to the 2019 case as the first case and to the operative complaint in that case as the second amended complaint.

preclusion determines whether matters undecided in a prior lawsuit fall within the bounds of that prior judgment." ***Id.***, ¶22.

¶149 The doctrine of claim preclusion has three elements: "'(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits.'" ***Id.***, ¶21 (quoted source omitted). The party asserting claim preclusion bears the burden of proof on each of these elements. ***Pasko v. City of Milwaukee***, 2002 WI 33, ¶16, 252 Wis. 2d 1, 643 N.W.2d 72.

*A. Additional Background*

¶150 The new complaint alleges claims of fraud, negligent misrepresentation, and strict liability misrepresentation. The new complaint alleges the following facts in support of these claims.

¶151 When Galloway and Schiewe first met in April 2018, Schiewe asked Galloway not to build on Galloway's property so as to "maintain an uninterrupted view" from Schiewe's property towards Galloway's property. In response, Galloway told Schiewe that Galloway would have to relocate the buildings Galloway planned to build on some of his property, which would result in increased construction costs. Schiewe told Galloway that Schiewe's future construction on Schiewe's property would not block the views from Galloway's property and that his only plan for his property in the sight line of Galloway's property was to remove an existing wooden shed left by the prior owner. Galloway promised not to block Schiewe's views towards Galloway's property if Schiewe would also promise not to block any of the views from Galloway's property. Schiewe expressed his

gratitude to Galloway and promised in return that Schiewe "would not block any of Galloway's views with any of Schiewe's construction."

¶152 Galloway asked Schiewe if they should reduce their promises to writing, and Schiewe responded that a written agreement was not needed because an existing document on file at the Waushara County courthouse restricts any future construction on Schiewe's property within the sight line of Galloway's property, aside from replacement of the existing wooden shed. Galloway believed Schiewe and agreed that there was no need to enter into a written contract. The two men then shook hands.

¶153 Galloway proceeded to construct six buildings on his property in "revised locations" out of the sight line of Schiewe's property. Galloway spent more than $3,000,000 to construct the buildings on his property, including the house on the 1.2-acre parcel.

¶154 In 2019, Schiewe commenced construction of two pole buildings on his property adjacent to Galloway's property, and Galloway filed the initial complaint regarding the construction of the two pole buildings in December 2019. Galloway learned at Schiewe's deposition in August 2021 that, contrary to the promise Schiewe made at the April 2018 meeting, Schiewe had planned to construct the two pole buildings at issue in the 2019 case "in close proximity to Galloway's" property since Schiewe first bought his property in 2012. Also, contrary to Schiewe's representation at the April 2018 meeting, the document on file with the Waushara County register of deeds does not appear to restrict construction on Schiewe's property in the sight line of Galloway's property. If Galloway had known that Schiewe's promise and representations were false, Galloway would have constructed the buildings on his property at the locations he had originally planned.

Galloway constructed his buildings at locations different from what he had originally planned to his financial detriment.

¶155    Schiewe intentionally made the false promise and representations in April 2018 to cause Galloway to relocate Galloway's buildings and "to thereby make Galloway vulnerable to Schiewe's later threats and coercion."   Since September 2019, Schiewe has made efforts, including threats, to coerce Galloway to sell to Schiewe the 1.2-acre property on which Galloway had built his house.

¶156    In September 2022, Galloway learned that, contrary to Schiewe's April 2018 promise and representations, Schiewe planned to construct a fuel depot adjacent to Galloway's property.   If Galloway had known in April 2018 of Schiewe's plan to construct the fuel depot, "Galloway would not have entered into any agreement with Schiewe."

¶157    In December 2022, Schiewe moved to dismiss the new case as barred by claim preclusion.  The circuit court granted the motion in March 2023.  At the hearing on the motion, the court reviewed the procedural history of the first case between Galloway and Schiewe that went to trial.  The court noted that in the first case it had not allowed the fraud and misrepresentation claims to be included in a consolidated second amended complaint as contrary to the court's no new claims order.  The court observed that the claims in the new complaint were identical to the claims that the court had disallowed as contrary to the no new claims order in the first case, and that the claims in both cases related to facts that, with the exception of the fuel depot, were alleged in the second amended complaint in the first case. The court also noted that the allegations about the fuel depot were relevant to the remedies to be ordered in the first case, but the court did not allow Galloway to bring new claims otherwise identical to the claims that the court had disallowed as

contrary to the no new claims order in the first case. The court then concluded that the elements for the application of claim preclusion were met and dismissed the claims with prejudice.

### B. Analysis

¶158 Galloway does not dispute that the first element for the application of claim preclusion, an identity between the parties in the two cases, is met here. As Schiewe notes, Galloway and Schiewe are "named parties" in both cases. *See Teske v. Wilson Mut. Ins. Co.*, 2019 WI 62, ¶28, 387 Wis. 2d 213, 928 N.W.2d 555 (concluding that "identity of parties [was] distinctly present" as to three of the plaintiffs and the defendant who were "named parties" in both cases).

¶159 As to the third element, a final judgment on the merits, Galloway asserts that there was not yet a final judgment in the first case because the postverdict remedies hearings had yet to be held when Galloway filed the new complaint and when the circuit court granted the motion to dismiss the new complaint. However, Galloway does not support this assertion with a developed argument based on citations to relevant legal authority, and we do not consider it further.[13] *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (we need not consider arguments unsupported by legal authority, "and we will not abandon our neutrality to develop arguments"); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992)

---

[13] More specifically, Galloway does not address the circumstances here, in which the jury had returned a verdict as to liability and damages and postverdict motions had been addressed, so that all that remained in the first case was a decision on remedies. In his appellant's brief, Galloway does not develop an argument at all. In his reply brief, Galloway only argues—in response to Schiewe's argument based on WIS. STAT. § 802.06(2)(a)10., which prohibits two pending cases for the same cause of action—that the statute and the case law cited by Schiewe applying the statute do not apply.

(we need not consider arguments unsupported by legal authority or inadequately briefed).

¶160   For purposes of determining whether the second element, an identity of claims, is met, Wisconsin has adopted the "'transactional approach.'" *Kruckenberg*, 279 Wis. 2d 520, ¶25 (quoted source omitted).  The transactional approach "reflects the expectation that parties who are given the capacity to present their entire controversies shall in fact do so." *Id.*, ¶27 (internal quotation marks and quoted sources omitted).  Pursuant to the transactional approach, "'all claims arising out of one transaction or factual situation are treated as being part of a single cause of action and they are required to be litigated together.'" *Teske*, 387 Wis. 2d 213, ¶31 (quoted source omitted).  "The concept of a transaction connotes a common nucleus of operative facts." *Kruckenberg*, 279 Wis. 2d 520, ¶26.

¶161   Applying these principles, we conclude that the claims in the new complaint—which seek relief for the harm allegedly caused to Galloway by Schiewe's allegedly false promise and representations regarding Schiewe's subsequent construction activity on Schiewe's property abutting Galloway's property—arise out of the same transaction as the claims in the second amended complaint in the first case—which sought relief for the harm allegedly caused to Galloway by Schiewe's construction activity on Schiewe's property abutting Galloway's property.  Both complaints contain allegations about the April 2018 promises that Schiewe and Galloway made not to build within the sight line of each other's property and not to block each other's views.  Both complaints contain allegations that Schiewe began in 2019 to construct the two pole buildings adjacent to Galloway's property.  Both complaints contain allegations about Schiewe's construction activity—concerning the two pole buildings in the second amended

complaint in the first case, and concerning the two pole buildings and the fuel depot in the new complaint—that occurred after Galloway's and Schiewe's communications about their construction plans.

¶162 While Galloway presented different legal theories and sought different remedies in the two complaints, the claims in the two complaints share the same nucleus of operative facts—Schiewe's construction activities on Schiewe's property abutting Galloway's property after Galloway's and Schiewe's communications concerning their respective plans for construction on their properties. *See* ***Kruckenberg***, 279 Wis. 2d 520, ¶26 ("Under the transactional approach, the legal theories, remedies sought, and evidence used may be different between the first and second actions. The concept of a transaction connotes a common nucleus of operative facts." (footnote omitted)).

¶163 Galloway argues that there is not an identity of claims because the new complaint contains new allegations of fact, specifically about the construction of the fuel depot, that post-dated the complaints in the first case. However, while the complaints in the first case concerned only the construction of the two pole buildings, and the new complaint contains allegations about the construction of both the two pole buildings and the fuel depot, the construction of the fuel depot was not necessary to support the fraud and misrepresentation claims based on Schiewe's alleged promise and subsequent construction conduct within the sight line of Galloway's property in alleged violation of that promise. Rather, Schiewe's construction conduct in alleged violation of his 2018 promise and representations began in 2019 with the construction of the pole buildings and, therefore, was known to Galloway at the time he filed his initial and first amended complaints in the first case. In other words, the "common nucleus of operative facts" in both cases

comprises Schiewe's alleged 2018 promise and Schiewe's 2019 construction of the pole buildings in alleged violation of the promise. The additional allegations in the new complaint of another mode of breaking that promise—the construction of the fuel depot—do not comprise a separate nucleus of operative facts so as to render claim preclusion inapplicable.

¶164    Galloway argues that he "never had the opportunity to litigate and present his fraud [and misrepresentation] claims to the jury," because the circuit court disallowed their inclusion in a consolidated second amended complaint in the first case. However, the facts alleged in the new complaint concerning those claims—namely, Schiewe's 2018 promise not to build in the sight line of Galloway's property and Schiewe's 2019 construction in that sight line—were known to Galloway at the time he filed his initial and first amended complaints in the first case in December 2019 and March 2020. But, as noted above, the fraud and misrepresentation claims were first raised only when Galloway sought to include them in a consolidated second amended complaint in the first case, more than six months after Galloway filed his initial complaint in the first case. That the court, in the exercise of its discretion, did not allow the fraud and misrepresentation claims to be included in a consolidated second amended complaint under the circumstances at the time that Galloway sought to include those claims, does not preclude the application of claim preclusion to bar Galloway from bringing those claims in a new case after the jury returned its verdict in the first case.

¶165    For this same reason, we reject Galloway's argument that the circuit court erred because its decision on claim preclusion in the new case contradicts, and cannot be reconciled with, the court's decision disallowing the inclusion of the fraud and misrepresentation claims in a consolidated second amended complaint in the

first case. The two decisions are subject to different standards of review and different legal principles. To repeat, that the circuit court properly exercised its discretion in making the decision in the first case under the erroneous exercise of discretion standard of review, does not render its decision of a question of law in the second case erroneous under the de novo standard of review.

¶166 Galloway also argues that his fraud and misrepresentation claims were not actually litigated. However, the doctrine of claim preclusion applies to claims "'which were litigated or which *might have been litigated* in the former proceedings.'" *Kruckenberg*, 279 Wis. 2d 520, ¶19 (emphasis added) (quoted source omitted).

¶167 Galloway further argues that the circuit court erroneously dismissed without prejudice Galloway's fraud and misrepresentation claims in the first case by disallowing their inclusion in a consolidated second amended complaint. However, Galloway properly raised this argument in his cross appeal in Appeal No. 2023AP2273, and we have addressed and rejected it above, *see* ¶¶71-89. Galloway also argues that the court erred in applying the no new claims order in the first case to the new complaint. We do not rely on the no new claims order in our de novo review of whether the new complaint is barred by claim preclusion, and, therefore, we do not consider this argument further.

¶168 In sum, we conclude that the circuit court properly dismissed the new complaint as barred by claim preclusion.[14]

---

[14] In reaching our conclusion that claim preclusion bars Galloway's fraud and misrepresentation claims based on Schiewe's pre-construction promise, we state no opinion on whether Galloway could in a new action make other claims concerning the fuel depot.

## V. Outstanding Motions

¶169   The parties have filed two motions in the course of the appellate proceedings which remain outstanding. We now address these motions in turn.

¶170   In December 2024, Schiewe filed a motion seeking attorney fees and other penalties as sanctions against Galloway's counsel under WIS. STAT. RULE 809.83(2). Schiewe asserts that counsel has engaged in unprofessional conduct by using uncivil and disparaging language in the briefs that counsel filed in these consolidated appeals, and by seeking "serial" extensions of the time to file those briefs. Schiewe provides numerous examples of what he asserts is unprofessional language in counsel's briefs, and details the seven motions that counsel filed seeking either an extension of the time to file a brief or to exceed the length of a brief allowed by the Rules of Appellate Procedure.

¶171   WISCONSIN STAT. RULE 809.83(2) allows appellate courts to sanction parties who violate court orders or the Rules of Appellate Procedure. We conclude that Schiewe fails to show that the language highlighted in his motion exceeds the bounds of zealous advocacy by counsel for his client to the extent that it is unprofessional. As to the motions that counsel filed throughout the briefing in these appeals, this court issued orders granting all but one of the motions, and Schiewe fails to show that we issued any of those orders in error. Accordingly, we deny Schiewe's motion for sanctions as unsupported.

¶172   In July 2025, after these consolidated appeals and cross-appeal were fully briefed and submitted to the court of appeals on briefs for disposition, Galloway filed a motion to remove one of the attorneys who has been included in Schiewe's appellate filings as counsel for Schiewe. Galloway asserted that the

attorney should be removed from appearing as counsel for Schiewe because the attorney failed to file an appearance in two of the appeals and engaged in professional misconduct while representing Schiewe before Galloway filed his initial complaint in the first case in December 2019. In the motion, Galloway also responds in opposition to Schiewe's December 2024 motion for sanctions, addressed above. We deny Galloway's motion as untimely and unwarranted.[15]

## CONCLUSION

¶173 For the reasons stated, we affirm the circuit court orders challenged in these consolidated appeals and cross-appeal. No costs to either party.

*By the Court.*—Orders affirmed.

This opinion is not recommended for publication in the official reports.

---

[15] While we have rejected Schiewe's assertion in his motion for sanctions that Galloway's counsel engaged in unprofessional conduct in his appellate briefing, we do admonish Galloway's counsel for the disparaging and abusive tenor of his accusations against Schiewe's attorney in his motion to remove that attorney. As we have previously cautioned Galloway's counsel, appellate representation that disparages opposing counsel does not constitute effective advocacy. *See Koble Invs. v. Marquardt*, 2024 WI App 26, ¶51 n.10, 412 Wis. 2d 1, 7 N.W.3d 915, *review granted* (WI Feb. 12, 2025) (No. 2022AP182).